Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment is **DENIED.**

**SO ORDERED.**

**PRESQUE ISLE HARBOR DEVELOPMENT COMPANY and Bawgam, Inc., Plaintiffs,**

v.

**The DOW CHEMICAL COMPANY, Defendant.**

No. 2:92–CV–30.

United States District Court, W.D. Michigan, Southern Division.

Jan. 25, 1995.

Robert M. Bordeau, Kendricks, Bordeau, Adamini, Keefe, Smith, Girard & Seavoy, Marquette, MI, Scott T. Forlund, Morrison & Hecker, Kansas City, MO, for plaintiffs.

Darrell M. Grams, Wise & Marsac, P.C., Detroit, MI, Sydney Rooks, Dow Chemical Co. Legal Dept., Midland, MI, for defendant.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, the Michigan Environmental Response Act ("MERA"), M.C.L. 299.601 *et seq.*, and the Michigan Environmental Protection Act ("MEPA"), M.C.L. 691.1201 *et seq.* Plaintiffs' complaint also states common law claims of trespass, nuisance, negligence, ultrahazardous or abnormally dangerous activities, and common law indemnity. Plaintiffs claim defendant is liable for investigation and clean-up costs. Now before the Court is defendant's motion for partial summary judgment and motion to

dismiss for failure to state a claim.[1] Because adjudication of defendant's motion requires consideration of the voluminous exhibits and affidavits filed by the parties, the motion will be decided under Fed.R.Civ.P. 56.

## FACTUAL BACKGROUND

In approximately 1903 the Cleveland Cliffs Iron Company established a facility at Marquette, Michigan, on the shore of Lake Superior, for the manufacture of pig iron and charcoal and the distillation of chemicals. A major waste by-product of these processes was tar, which was disposed of at various sites on the property, but primarily on the northernmost section.

In 1935, the Cliffs Dow Company was formed, with all of the stock being owned by Cleveland Cliffs and the Dow Chemical Company ("defendant" or "Dow").[2] For most of the time the Cliffs Dow Company was in existence, defendant owned 66% of the stock.[3] Cliffs Dow continued all the operations of the Cleveland Cliffs Iron Company except the manufacture of pig iron. During its more than 30 years of operation, Cliffs Dow generated a variety of waste by-products, some of which contain or are alleged to contain hazardous substances, which were knowingly disposed of or accidently discharged on the property at issue here.[4]

In 1968, all Cliffs Dow stock was sold to the Georgia–Pacific Corporation and E.L. Bruce Company and the name of the plant was changed to Royal Oak Charcoal Company, which continued unchanged the Cliffs Dow manufacturing operations.

In October 1969, Royal Oak Charcoal sold the plant and the property to the C & W Company.[5] At some subsequent point, C & W changed its name to Presque Isle Harbor Development Company ("Presque Isle"). Maurice Warshawsky testified that the reason for the purchase was to allow the partnership more time to salvage and liquidate equipment on the property.

The relevant parcel of real property consists of approximately 89 acres along the shore of Lake Superior in the northwest section of Marquette, Michigan. In 1970, Presque Isle decided to pursue the idea of developing the southern portion of the property. Various development plans were contemplated over the years, but none of them were implemented. In 1986, the Presque Isle partnership established Bawgam, Inc., which was wholly owned by the partnership, and conveyed to it the northernmost nine acres of the property. Mr. Warshawsky testified that this action was taken "[b]ecause of the publicity about contamination; we didn't want it connected with the rest of the property." Deposition of Maurice Warshawsky, 3/25/93, p. 52.

In 1990, at a public hearing before the Marquette Planning Commission on a planned unit development (PUD) submitted by Presque Isle, an attorney representing Dow stated that the property was contaminated. Plaintiffs allege that this statement "was widely publicized, and development of the property was thereby rendered impossible." Plaintiffs' Response Br., p. 2. Subsequently, plaintiffs filed their complaint alleging Dow's liability for all investigation and clean-up costs under CERCLA, MERA, and MEPA, and under common law theories of trespass, nuisance, negligence, ultrahazardous activities, and common law indemnity.[6] Plaintiffs also seek damages under the common law theories for unreasonable interference with their use and enjoyment of their property. The Court has read the pleadings

---

**1.** Defendant's request for summary judgment does not include Count IV of plaintiffs' complaint, which contains the allegations of trespass.

**2.** Initially there were four stockholders. The details of the stock transfer to Cliffs Dow and defendant are irrelevant for purposes of this motion.

**3.** At no time did defendant's stock ownership fall below 60%.

**4.** The fact of the disposal of these waste by-products is uncontested. What is at issue is the actual control, if any, defendant exercised over the disposal.

**5.** C & W was a partnership comprised of Sam Cohodas and Maurice Warshawsky.

**6.** Plaintiffs' complaint also requests, under all the stated theories of liability, a mandatory injunction ordering Dow to investigate and clean up the property.

and exhibits submitted by the parties, heard their oral arguments, and now considers this matter ready for disposition.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original).

The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the moving party is not required to expressly negate the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The movant satisfies its initial burden merely "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the movant makes a sufficient showing of an absence of evidence to support the non-moving party's case, the non-moving party then assumes the burden of coming forward with evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at

324–25, 106 S.Ct. at 2553. The non-moving party may not rest on the mere allegations contained in the pleadings, but, rather, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. And an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355.

This Court has at least some discretion in evaluating the non-moving party's evidence and in determining whether that party's claim is plausible. *Barnhart,* 12 F.3d at 1389. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

## ANALYSIS

### A. CERCLA CLAIM [7]

#### 1. Standard of Liability

Plaintiffs claim defendant is liable under CERCLA as an "operator." 42 U.S.C.

---

7. The Court's analysis of plaintiffs' CERCLA

claims applies with equal force to plaintiffs'

§ 9607(a)(2). In support of its motion for partial summary judgment, defendant claims the proper standard for CERCLA liability in this case is the "piercing the corporate veil" test, and that plaintiffs cannot satisfy the elements of this test. This argument is based on defendant's assertion, relying on the opinion of the Sixth Circuit in *Anspec Co., Inc. v. Johnson Controls, Inc.*, 922 F.2d 1240 (6th Cir.1991), that Michigan law must be applied to determine whether defendant is liable as an owner or operator. Defendant simply misreads the *Anspec* opinion.

In *Anspec,* the relevant issue was whether successor corporations incurred the liability of their predecessors. After determining as a matter of statutory interpretation that successor corporations could indeed be liable under CERCLA, the Sixth Circuit concluded that on remand the "district court will follow Michigan law in its application of successor liability." *Anspec,* 922 F.2d at 1248. Defendant relies on this language for its assertion that Michigan law will control its liability in the instant case. However, as is clear from the Sixth Circuit's prior discussion, *id.* at 1244–45, this language refers solely to what liabilities of a predecessor are in fact assumed by a successor corporation. State law has no relevance to the actual existence of any liability as an operator under CERCLA, which is purely a federal question.

The Court previously has addressed this issue of the proper standard for operator liability under CERCLA. In *Kelley ex rel. Michigan Natural Resources Comm'n v. Tiscornia,* 827 F.Supp. 1315 (W.D.Mich.1993), the Court reviewed relevant caselaw from the Sixth Circuit, Michigan corporate law, and the various tests employed by other circuits and by other judges in this district. The Court concluded that the "direct control or participation" test, as articulated in *New York v. Shore Realty,* 759 F.2d 1032 (2d Cir.1985), is the appropriate standard to be used in determining liability as an operator under CERCLA. *Tiscornia,* 827 F.Supp. at 1324. This standard holds responsible parties accountable for their own tortious acts.[8] Using this standard, the Court must decide whether, as a matter of law, defendant actively participated in the waste handling practices and decisionmaking processes of Cliffs Dow. "Active participation is not limited to actual disposal, but extends to decisionmaking and supervision such that [defendant] could be considered an active ... participant in the unlawful conduct." *Tiscornia,* 827 F.Supp. at 1325.[9]

### 2. Application of the Standard

Plaintiffs' claim that defendant is liable under CERCLA is based on plaintiffs' allegation that Dow, directly and/or through Cliffs Dow, disposed of hazardous substances on the property at issue here. For identification of these hazardous substances, plaintiffs rely on three reports, dated June 1987, June 1988, and August 1990. The "[h]azardous substances identified in these reports include, but are not limited to, Ethylbenzene, Xylene, 2, 4–Dimethylphenol, Toluene, Tetrachloroethylene, Trichlorofluoromethane, Phenol, O–Cresol, M/P–Cresol, Arsenic, Chromium, Copper, Lead, Nickel, Silver, and Zinc." Complaint, p. 7, ¶ 15. The evidence upon which plaintiffs rely in support of their allegation of Dow's control of Cliffs Dow includes: members of Dow's board of directors also being members of the Cliffs Dow board of directors; former Dow personnel being

---

MERA claims, *Flanders Ind., Inc. v. State of Michigan,* 203 Mich.App. 15, 21, 512 N.W.2d 328 (1993), and resolution of the issue of defendant's liability will also, of necessity, govern the viability of plaintiffs' claim under MEPA. M.C.L. 691.1202(1).

8. In *Shore Realty,* the Second Circuit held the individual defendant, Donald LeoGrande, liable as an "operator" under CERCLA. LeoGrande was the principal officer and shareholder of Shore Realty Corp. The Second Circuit noted that "the definition of 'owner or operator' excludes a person, who, without participating in the management of a ... facility, holds indicia of

ownership primarily to protect his security interest in the facility." *Shore Realty,* 759 F.2d at 1052 (quoting 42 U.S.C. § 9601(20)(A)). The Second Circuit then concluded: "The use of this exception implies that an owning stockholder who manages the corporation, such as LeoGrande, is liable under CERCLA as an 'owner or operator.'" *Id.*

9. The Eighth Circuit recently adopted a virtually identical standard for operator liability. It requires actual exercise of the authority to control waste disposal practices. See *United States v. Gurley,* 43 F.3d 1188 (8th Cir.1994).

hired for management positions at Cliffs Dow; the interviewing by Dow officers of a candidate for the general manager position at Cliffs Dow; sales contracts for Cliffs Dow's purchase of chemicals from Dow; Dow's interest in the research laboratory activities of Cliffs Dow; review of Cliffs Dow financial reports at Dow board meetings; and the offer of Dow stock purchase options to Cliffs Dow employees.

Defendant correctly responds to these general allegations by arguing that the complained of "actions were at all times merely consistent with those of prudent investors." Defendant's Reply Br., p. 5. More importantly, none of these activities relate to the issue of Dow's control of, or even participation in, the waste management practices of Cliffs Dow.

The specific evidence offered by plaintiffs in regard to defendant's participation in Cliffs Dow's waste management practices include: the deposition of a chemical research technician at Cliffs Dow who testified that defendant established a program changing the way waste tar was handled at the Cliffs Dow plant;[10] internal Dow documents indicating Dow's involvement in monitoring and possible management of general waste water control at the Cliffs Dow facility; a proposal in 1959 to the Michigan Water Resources Commission of a waste disposal program by a Dow employee on behalf of Cliffs Dow; and the presence of a Cliffs Dow "representative on Dow's Subcommittee 18, a Dow organization dealing with waste for all Dow facilities at all Dow companies, including Cliffs Dow." Plaintiffs' Response Br., p. 10.

In its reply brief, defendant argues that membership on Subcommittee 18 was voluntary and open to any entity affiliated with Dow, and that it was "strictly an information-sharing forum which did not and could not order any members to undertake any actions with respect to their own waste issues. Subcommittee 18 did not supervise, set policy, make decisions for, or otherwise participate in the waste handling activities of its members." Defendant's Reply Br., p. 3. This unrefuted argument is supported by the

sworn affidavit of Charles Sercu, a former officer of Subcommittee 18.

Defendant admits that a Dow employee analyzed waste water samples from the Cliffs Dow manufacturing operations, but claims that "the nature of that work, or arrangements between Cliffs Dow and [defendant], is unknown." Defendant's Reply Br., p. 3. As to the 1959 presentation to the Michigan Water Resources Commission by a Dow employee on behalf of Cliffs Dow, defendant argues that it was merely "part of 'for-hire' consulting services provided by Dow Industrial Services Division, a [Dow] operating division." *Id.* Significantly, defendant does not even address the testimony of Eugene Cole as to Dow's direct participation in the management of waste tar generated by Cliffs Dow operations.

Given the nature of this evidentiary record, especially in light of the fact that the discovery period remains open until June 1, 1995, it appears to the Court that at this stage of these proceedings there exists a genuine issue of material fact whether defendant actively participated in the waste handling practices and decisionmaking processes of Cliffs Dow. The significance of the waste water analysis in the 1930s by a Dow employee is unclear and, more importantly, the deposition testimony of Eugene Cole, if believed by the trier of fact, could establish Dow's direct control of or participation in Cliffs Dow's waste disposal practices. Therefore, a grant of summary judgment to defendant on plaintiff's CERCLA claim at this time would be improper.

**B. STATUTE OF LIMITATIONS**

**1. Standard to be Applied**

At the outset, the Court must determine which statutory provision embodies the applicable statute of limitations for plaintiffs' common law claims. Defendant argues that the Michigan statute, M.C.L. 600.5805, controls. The relevant provisions of this statute state:

Sec. 5805. (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, af-

---

**10.** This technician, Eugene Cole, testified that the newly established program called for the tar

to be collected in settling tanks, the effluent from which drained into Lake Superior.

ter the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

\*     \*     \*     \*     \*     \*

(8) the period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

M.C.L. 600.5805(1) and (8). Defendant also acknowledges, however, that the CERCLA accrual rule, 42 U.S.C. § 9658, may control. The relevant provisions of this statute are as follows:

(a) State statutes of limitations for hazardous substance cases

(1) Exceptions to state statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the state statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

(b) Definitions

As used in this section—

(4) Federally required commencement date

(A) In general

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the haz-

ardous substance or pollutant or contaminant concerned.

42 U.S.C. § 9658(a)(1) and (b)(4)(A).

This Court has supplemental jurisdiction over plaintiffs' CERCLA claims pursuant to 28 U.S.C. § 1367(a). In such cases, when the Court is obligated to determine an issue of state law, "state law as announced by the highest court of the State is to be followed." *Comm'r of Internal Revenue v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Bosch,* 387 U.S. at 465, 87 S.Ct. at 1783. The Court must rule "based on its assumption of how the highest state court would rule if faced with the same case." *Coffey v. Foamex L.P.,* 2 F.3d 157, 160, n. 1 (6th Cir.1993) (citing *Bosch* ).

Determination of whether the Michigan limitations period begins to run earlier than the federally required commencement date requires determination of when the Michigan period begins to run. This raises the question of whether the discovery rule of accrual applies in cases of injury to property caused by environmental contamination, a question that has not been decided by the Michigan Supreme Court. Therefore, this Court must predict how the Michigan Supreme Court would rule on this question.

The Michigan Supreme Court has held that the discovery rule applies in cases of medical malpractice, negligent misrepresentation, and products liability claims involving both personal injury and injury to property. See *Moll v. Abbott Laboratories,* 444 Mich. 1, 12–13, 506 N.W.2d 816 (1993); *Warren Consolidated Schools v. W.R. Grace & Co.,* 205 Mich.App. 580, 582–83, 518 N.W.2d 508 (1994); *Mascarenas v. Union Carbide Corp.,* 196 Mich.App. 240, 492 N.W.2d 512 (1992). The state's highest court has explained that "concern about barring a plaintiff's cause of action prematurely has led to our adoption of the discovery rule under the proper circumstances." *Moll,* 444 Mich.

at 12, 506 N.W.2d 816. More specifically, the court explained that it is "illogical and unintelligent" to hold that "a tort cause of action accru[es] before plaintiff has knowledge, or should have knowledge, of the [injury]." See *id.* at 13, 506 N.W.2d 816. In this Court's opinion, this reasoning clearly applies to cases of injury to property caused by environmental contamination. Accordingly, the Court concludes that, if faced with the same case, the Michigan Supreme Court would hold that the discovery rule governs the date of accrual for claims of injury to property caused by environmental contamination.

■ The Michigan Supreme Court has held that under the discovery rule of accrual "the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Moll,* 444 Mich. at 5, 506 N.W.2d 816. "The discovery rule applies to the discovery of an injury, not to the discovery of a later realized consequence of the injury." *Id.* at 18, 506 N.W.2d 816. "A plaintiff need not be able to prove each element of the claim, nor may the claim be held in abeyance indefinitely until the plaintiff obtains professional assistance to determine the existence of the claim." *Warren Schools,* 205 Mich.App. at 583, 518 N.W.2d 508; *Detroit Bd. of Educ. v. Celotex Corp. (On Remand),* 196 Mich.App. 694, 706, 493 N.W.2d 513 (1992). Therefore, the Court concludes that, if the Michigan standard were applied, plaintiffs' common law causes of action accrued when plaintiffs discovered or, through the exercise of reasonable diligence, should have discovered their claimed injury.

In the Court's estimation, the Michigan standard of "reasonable diligence" is functionally identical to the "reasonably should have known" standard of the CERCLA accrual rule. Consequently, the date of accrual would be the same under either standard. Therefore, because the state commencement date is not earlier than the federally required commencement date, the Michigan "reasonable diligence" standard governs the accrual date of plaintiffs' common law claims.

**2. Application of the Standard**

Defendant argues that plaintiffs' common law claims are barred under either limitation period because Maurice Warshawshy knew of the existence of tar disposal areas on the property when Presque Isle purchased it in 1969. At the very latest, Dow argues, Warshawsky and his partner, Sam Cohodas, knew of the contamination in 1986 when they sold the northernmost portion of the property to Bawgam, Inc., in which Warshawsky is the majority shareholder.

■ Plaintiffs, however, assert that their claims are not barred under either statutory limitations period. They argue that the damages underlying their common law claims resulted from their inability to proceed with their planned development of the property, not the mere contamination of the property. Plaintiffs' Response Br., p. 14. Therefore, plaintiffs claim their cause of action did not accrue under the Michigan statute of limitations until 1990 when Dow's representative's statements at the public hearings on plaintiffs' PUD generated negative publicity which resulted in abandonment of the development project.[11]

11. Alternatively, plaintiffs claim they "did not have specific knowledge of the hazardous substances, pollutants, and contaminates [sic] as required by the plain language of 42 U.S.C. § 9658(b)(4)(A)" and, accordingly, "under the CERCLA accrual rule, the statute of limitations for plaintiffs' state law claims against Dow has not yet begun to run." Plaintiffs' Response Br., p. 21. In the Court's opinion, this argument is wholly without merit.

Plaintiffs adduce no legal authority to support their argument that actual knowledge of each specific hazardous substance, pollutant, or contaminant is required for the limitation period under 42 U.S.C. § 9658(b)(4)(A) to begin to run. Further, the Court finds no such specific knowl-

edge requirement in the plain language of the statute. And, in reaching this conclusion, the Court is in accord with the only other federal court to construe the CERCLA accrual rule in the context of an argument such as plaintiffs'. See *Torrance Redevelopment Agency v. Solvent Coating Co.,* 763 F.Supp. 1060, 1067 (C.D.Cal.1991).

More importantly, plaintiffs' proposed interpretation of the CERCLA accrual rule is inappropriate in the specific factual context of their claim. Plaintiffs do not claim that their inability to proceed with their development plan for the property is the result of any specific hazardous substance or environmental contaminant, either known or as yet undiscovered. Rather, plaintiffs' claim is that generalized statements about

If the evidentiary record consisted only of documents produced prior to 1984, the Court would be unable to decide as a matter of law whether through the exercise of reasonable diligence plaintiffs should have discovered that contamination of the property might impede their plans for development of that property. Defendant points to Maurice Warshawsky's knowledge of the disposal of waste tar on the property at least as early as 1969, but plaintiffs correctly note that tar is not. listed as a hazardous substance by any governmental agency. Plaintiffs point to a brochure prepared for them by an architectural firm in 1979 laying out the details of a proposed condominium complex and argue that, "[h]ad the architects discovered through their Department of Natural Resources review and extensive site study that the wood tars would preclude development, logic dictates that this brochure would never have been prepared. This conclusion is bolstered by the fact that Dow cannot offer any evidence in the record that plaintiffs knew *at this time* that development of the site would be precluded by contamination there." Plaintiffs' Response Br., p. 17 (emphasis added). Defendant then refers to a letter sent by one of its attorneys in May 1984 to Robert Bordeau, the attorney for the Warshawsky–Cohodas partnership, informing him about "possible remedial action to remove or contain waste resulting from the manufacture of wood products that may be present at sites in and around Marquette, Michigan." Plaintiffs point out, however, that this letter also informed Mr. Bordeau that "no liability has been assessed . . . by state or federal authorities." See Plaintiffs' Ex. 36.[12] Taken as a whole, then, the documentary record compiled up until 1984 does not allow the Court to decide the statute of limitations issue as a matter of law. However, two subsequent developments in the record do allow such disposition.

The documentary evidence described above clearly raises questions about the pos-

sibility of contamination on the property, but just as clearly establishes a genuine issue as to Presque Isle's knowledge of how, if at all, the possibility of contamination would affect any development plans. Given this factual background, however, the Court concludes that Maurice Warshawsky's deposition testimony that Presque Isle established Bawgam, Inc. and conveyed to it the most contaminated section of the property "[b]ecause of the publicity about contamination" establishes as a matter of law that, had they exercised reasonable diligence, plaintiffs should have known of the damage they allege under the common law claims. Warshawsky testified that Presque Isle did not want the parcel conveyed to Bawgam "connected with the rest of the property": connected, that is, in the public perception or, more importantly, in the minds of the Marquette Planning Commission. Also, at least as early as 1984, the documentary record contains media references to the property as a "toxic dump site" which is "contaminated mainly by two toxic substances, benzine and toluene." See Ex. 24 to Defendant's Reply Brief. Taken together, Warshawsky's deposition testimony and the media characterization of the property belie plaintiffs' allegation that the comments of Dow's representative at a 1990 public hearing were *the* reason plaintiffs were unable to proceed with their planned development.

■ Further support for the Court's conclusion is provided by an appraisal of the property done in 1988 for the estate of Sam Cohodas as a means of arriving at the purchase price for sale of Cohodas's interest in the partnership's assets to the partnership. See Ex. 26 to Defendant's Reply Brief. This appraisal noted that "some groundwater contamination does exist," but that the proposed development complex would be supplied by city water. Therefore, the appraisal noted, the risk of exposure via ingestion would be eliminated. However, the appraisal also not-

"contamination" of the property adversely impacted their planned development.

12. In considering this particular piece of evidence, the Court notes that liability to a governmental agency is not the claim at issue here under plaintiffs' common law theories of liability.

ed that there remained the possibility of exposure by dermal contact and inhalation, and pointed out that the company hired to do the groundwater analysis was "not authorized to test for soil contamination and ha[d] not been requested to discuss the health affects [sic] of soil contamination." See Ex. 25 to Defendant's Reply Brief.[13]

In sum, then, there is sufficient undisputed evidence to allow the Court to conclude as a matter of law that through the exercise of reasonable diligence plaintiffs should have known, no later than December 1988, of the injury they allege under their common law claims. Therefore, the limitations period began to run in December 1988, at the latest, and expired in December 1991, at the latest. Plaintiffs' common law claims, contained in their complaint filed on February 4, 1992, are untimely.

An order consistent with this opinion will issue forthwith.

### ORDER

In accordance with the opinion of the Court of even date,

Defendant's motion for summary judgment is DENIED as to counts I, II, and III, and GRANTED as to counts V, VI, VII and VIII of plaintiffs' complaint.

IT IS SO ORDERED.

---

**13.** The groundwater quality investigation referred to in the appraisal was actually done in December 1985.