FOREST CITY ENTERPRISES, INC v LEEMON OIL COMPANY

Docket Nos. 177520, 187676. Submitted October 16, 1997, at Detroit. Decided February 10, 1998, at 9:10 A.M. Leave to appeal sought.

Forest City Enterprises, Inc., and its insurer, Nationwide Insurance Company, brought an action in the Macomb Circuit Court in 1990 against Leemon Oil Company, seeking damages for the environmental cleanup of a parcel of commercial real estate owned by Forest City that had been used by tenants to operate a gas station and a dry cleaner for at least twenty-five years and had been found to contain contamination including BTEX (gasoline contaminants, benzene, toluene, ethylbenzene, and xylene) and chlorinated solvents (associated with the dry-cleaning process). Leemon Oil leased the gas station from March 1982 until December 1985. The evidence showed that Forest City had not told the dry cleaner before 1990 that the discharge of its chlorinated solvents was through a septic tank and field system and that a Leemon Oil truck had spilled gasoline in 1983. Forest City asserted common-law claims of breach of the lease contract, waste, nuisance, indemnity, and trespass and several statutory claims. The jury found that Leemon Oil did not breach its lease or commit waste, but that it created a nuisance on land that was not part of the leased land. The jury also found no liability regarding the indemnity and breach of contract claims. With regard to Forest City's claim under the Michigan Environmental Response Act (MERA), MCL 299.601 et seq.; MSA 13.32(1) et seq., the jury found that Forest City's damages were $1,399,501 but that 95.5 percent of the damages were attributable to Forest City's own negligence. The court, Raymond R. Cashen, J., concluded that the nuisance claim was barred by the three-year statute of limitations and that Leemon Oil should contribute a total of $6,927 under the MERA for the cleanup costs and entered a judgment of no cause of action for the waste and contract claims and for $6,927 for the MERA claim. The court denied Forest City's motion for a new trial, judgment notwithstanding the verdict, amended findings, and an amended judgment and awarded Leemon Oil $98,000 in mediation sanctions. The plaintiffs appealed and Leemon Oil cross appealed from the judgment (Docket No. 177520), and the plaintiffs appealed from the order denying their

postjudgment motion and awarding Leemon Oil mediation sanctions (Docket No. 187676). The appeals were consolidated.

The Court of Appeals *held*:

1. The court did not err with regard to its treatment of Forest City's claim against Leemon Oil as one for contribution under subsection 12c(3) of the MERA, MCL 299.612c(3); MSA 13.32(12c)(3). The record supports the court's finding that Forest City contributed to the indivisible harm for purposes of § 12c and is jointly and severally liable.

2. The court did not err in applying the statutory criteria in subsection 12c(3) in determining the amount of contribution, if any, that should be paid by Leemon Oil to Forest City.

3. The court did not err in allowing contribution with regard to only the eleven percent of the total cost attributable solely to BTEX contamination, not the cost attributable solely to chlorinated solvents contamination or to combined contamination of both BTEX and chlorinated solvents. The evidence supports the finding that Leemon Oil was not responsible, or at least not solely responsible, for the entire BTEX contamination. The court did not err in using the jury's verdict to determine the percentage of contribution attributable to Leemon Oil.

4. Leemon Oil's expert witness was properly allowed to give his opinion regarding matters that Forest City alleged were not disclosed in discovery. The court's refusal to allow into evidence a television station's videotape of the 1983 gas spill was not an abuse of discretion.

5. The court did not err in finding the nuisance claim barred by the statute of limitations or in granting summary disposition for Leemon Oil with regard to the trespass claim.

6. The fact that the MERA claim required an equitable apportionment does not change the fact that the resulting judgment was for monetary relief only, not equitable relief, for purposes of application of the mediation sanction rule, MCR 2.403(O).

7. Costs were properly awarded to Leemon Oil. The court did not err in finding that Forest City was not the prevailing party on the entire record. A party entitled to actual costs under MCR 2.403(O)(6) for a cause of action is properly deemed to be the prevailing party on the entire record under MCR 2.625(B)(2).

8. Leemon Oil's motion for a directed verdict that alleged that the testimony of Forest City's experts lacked factual support and was based on speculation was properly denied. The testimony was not based on speculation.

9. The court's award of attorney fees to Leemon Oil was not an abuse of discretion.

Affirmed.

1. ENVIRONMENT — ENVIRONMENTAL RESPONSE ACT — ACTIONS — CONTRIBUTION — JOINT AND SEVERAL LIABILITY.

    Contribution is the critical issue once it is determined under § 12c of the Michigan Environmental Response Act that parties are jointly and severally liable for an indivisible harm caused by contamination, and the amount, if any, of contribution should be determined by applying the criteria in subsection 12c(3); the Legislature did not intend to allow a person liable under § 12 of the MERA to escape liability by bringing a cause of action under § 12 against another liable person (MCL 299.612, 299.612c; MSA 13.32[12], 13.32[12c]).

2. WITNESSES — EXPERTS — OPINION TESTIMONY.

    An expert witness may base opinion testimony on hearsay information or on findings and opinions of other experts.

3. EVIDENCE — AUTHENTICATION.

    The requirement of authentication as a condition precedent to the admission of evidence is satisfied by evidence that the matter in question is what its proponent claims; authenticated proffered evidence may be excluded where there is another bar to admissibility such as lack of relevancy, undue prejudice, confusion, or waste of time (MRE 403, 901).

4. LIMITATION OF ACTIONS — INJURIES TO PROPERTY.

    A three-year period of limitation applies to actions for injuries to property; the claim accrues at the time the wrong on which the claim is based was done regardless of the time when damage results; the cause accrues on the date that the plaintiff was harmed by the defendant's negligent act, as opposed to the date that the defendant acted negligently (MCL 600.5805[8], 600.5827; MSA 27A.5805[8], 27A.5827).

5. LIMITATION OF ACTIONS — DISCOVERY RULE.

    A plaintiff's claim in an action where the discovery rule is found to be appropriate accrues when the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, an injury and the causal connection between the injury and the defendant's breach of duty.

6. TRESPASS — ACCIDENTAL GASOLINE SPILL.

    Summary disposition in favor of the defendant is appropriate in a trespass action that is based on an accidental spill of gasoline; an accidental gasoline spill does not constitute a trespass.

7. PRETRIAL PROCEDURE — MEDIATION — EQUITABLE CLAIMS — EQUITABLE RELIEF.

> A court may submit to mediation any civil action where the relief sought is primarily money damages or division of property; a mediation panel may determine an equitable claim in determining the amount of damages but cannot make a separate award of equitable relief (MCR 2.403[A][1]).

8. PRETRIAL PROCEDURE — MEDIATION — EQUITABLE RELIEF — MEDIATION SANCTIONS.

> An award of equitable relief in an action is a relevant factor in determining if mediation sanctions should be ordered pursuant to MCR 2.403(O)(5); "equitable relief," as used in the court rule, is not the same as the consideration of equitable issues; a party does not receive a verdict for equitable relief where, although the court may have considered equitable issues, the resulting verdict is only for monetary relief; "equitable relief" is that species of relief sought in a court with equity powers, e.g., specific performance or an injunction instead of money damages.

9. TRIAL — TAXATION OF COSTS — PREVAILING PARTY.

> That a plaintiff recovered less than the full amount of damages sought is not dispositive of whether the plaintiff was the prevailing party for purposes of an award of costs under MCR 2.625(B)(2); the plaintiff's mere recovery of some damages is not enough for the plaintiff to be considered a prevailing party; a party must show, at the very least, that its position was improved by the litigation in order to be considered a prevailing party.

10. TRIAL — TAXATION OF COSTS — MEDIATION — MEDIATION SANCTIONS.

> The party entitled to actual costs as mediation sanctions under MCR 2.403(O)(6) for a cause of action is also to be deemed the prevailing party under MCR 2.625(B)(2) on the entire record.

*Mason, Steinhardt, Jacobs & Perlman, Professional Corporation* (by *Jonathan B. Frank*), and *Law Offices of Richard A. Barr* (by *Richard A. Barr*), for the plaintiffs.

*Pedersen, Keenan, King, Wachsberg & Andrzejak* (by *Daniel P. King*), for the defendant.

Before: SAAD, P.J., and O'CONNELL and M. J. MATUZAK* , JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

SAAD, P.J. In this environmental cleanup dispute between a commercial landlord and tenant, the landlord, Forest City Enterprises, Inc., and its insurer, Nationwide Insurance Company (hereafter Forest City) appeal from certain rulings by the trial court, and the tenant, Leemon Oil Company cross appeals. We consolidated the appeals and affirm in all respects.

I

BACKGROUND AND PROCEDURAL HISTORY

Forest City was the proprietor of a parcel of commercial real estate in Macomb County that, for at least twenty-five years, was used by a retail dry cleaner and an adjacent gas station. Although different companies occupied the gas station over the twenty-five-year period, defendant Leemon Oil leased the gas station from March 1, 1982, until December 1985.

In 1988, a routine environmental assessment of the property revealed two types of contamination in the subsurface soils and groundwater: "BTEX" (gasoline contaminants, benzene, toluene, ethylbenzene, and xylene) and chlorinated solvents (associated with the dry-cleaning process). (At trial, there was evidence presented that, before 1990, Forest City had not told the dry cleaner that disposal was by septic tank [rather than sewer] and therefore the dry cleaner had been discharging chlorinated solvents through a septic tank and field system.) Upon discovery of the contamination, Forest City undertook a massive cleanup.

In 1990, Forest City filed this claim against its former tenant, Leemon Oil. Forest City's complaint alleged that on August 11, 1983, a Leemon Oil tanker

spilled about 2250 gallons of gasoline in the immediate area of its gas pumps, causing the whole or a substantial part of the contamination at the site. In response, Leemon Oil admitted the existence of a spill, but alleged that its agent had adequately cleaned up the spill in 1983.

Following amendments, Forest City eventually asserted five common-law theories against Leemon Oil (breach of lease contract, waste, nuisance, indemnity, and trespass), and three statutory claims.[1] Pursuant to special verdict forms, the jury found that Leemon Oil did not breach its lease or commit waste, but that it created a nuisance on land that was not part of the leased land. (The indemnity claim was tried with the breach of contract claim and the jury found no liability.) The trial court ultimately concluded that the nuisance claim was barred by the three-year statute of limitations.

For reasons not clear in the record, the only statutory claim that was tried was the MERA claim, and with regard to that claim the jury found that Forest City's damages were $1,399,501 but that 95.5 percent of the damages were attributable to Forest City's own negligence.[2] Following supplemental proceedings regarding Forest City's MERA claim, the trial court found that Leemon Oil should contribute a total of

---

[1] Forest City alleged violations of the Michigan Hazardous Waste Management Act, MCL 299.501 et seq.; MSA 13.30(1) et seq., the Michigan Environmental Protection Act, MCL 691.1202 et seq.; MSA 14.528(202) et seq., and the Michigan Environmental Response Act (MERA), MCL 299.601 et seq.; MSA 13.32(1) et seq., all of which were substantially repealed and reenacted by 1994 PA 451, effective March 30, 1995.

[2] The instructions allowed the jury to assess the total amount of damages if it was unable to separate the harm caused by Leemon Oil's conduct from the conduct of others.

$6,927 under the MERA for the cleanup costs. Accordingly, the trial court entered a judgment of no cause of action for the waste and contract claims and for $6,927 for the MERA claim.

Leemon Oil thereafter moved for costs and mediation sanctions, while Forest City moved for a new trial, judgment notwithstanding the verdict, amended findings of the trial court, and an amended judgment. Leemon Oil was awarded $98,000 in mediation sanctions on May 15, 1995. This appeal and cross appeal followed.

II

ANALYSIS

A

Forest City asserts that the trial court erred in its interpretation of the MERA in concluding as a matter of law that the BTEX contamination was "divisible" from the chlorinated solvent contamination. According to Forest City, because the property was contaminated by Leemon Oil and the dry cleaners, § 12c of the MERA, MCL 299.612c; MSA 13.32(12c), requires the trial court to determine if the two contaminating substances were divisible or indivisible. Forest City submits that the contaminants were intermingled and *indivisible*. Thus, because Leemon Oil caused some or all of the "indivisible" contamination, Forest City contends that Leemon Oil should be jointly and severally liable with the dry cleaners for the entire $1.4 million, subject to Leemon Oil's contribution rights under subsection 12c(3).

We find no merit to this argument, for multiple reasons. As a threshold matter, Forest City's argument incorrectly assumes that contamination must have

been caused by either Leemon Oil or the dry cleaner. However, Leemon Oil was not the only tenant of the gas station. At trial, issues pertaining to who caused the contamination, when the contamination occurred, and who should be responsible for the contamination were hotly disputed.

Moreover, Forest City's argument also incorrectly assumes that it should bear no fault for any portion of the spill. Forest City's principal argument concerning divisibility is one of statutory construction. Therefore, our primary goal is to ascertain and give effect to the Legislature's intent. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995). A court must look to the object of a statute and the harm that it is designed to remedy and strive to apply a reasonable construction to accomplish the purpose of the statute. In this endeavor, we should not abandon the canons of common sense. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

At the time the trial court heard this matter, § 12c of the MERA[3] provided, in relevant part:

> (1) If 2 or more persons acting independently cause a release or threat of release that results in response activity costs, or damages for injury to, destruction of, or loss of natural resources, and there is a reasonable basis for division of harm according to contribution of each person, each person is subject to liability under section 12 only for the portion of the total harm that the person caused. However, a person seeking to limit its liability on the ground that the entire harm is capable of division shall have the burden of

---

[3] 1994 PA 451, effective March 30, 1995, repealed § 12c of the MERA and reenacted it as § 20129 of the Natural Resources and Environmental Protection Act, MCL 324.20129; MSA 13A.20129.

proof as to the divisibility of the harm and as to the apportionment of liability.

(2) If 2 or more persons *cause or contribute to an indivisible harm* that results in response activity costs, or damages for injury to, destruction of, or loss of natural resources, each person is subject to liability under section 12 for the entire harm.

(3) *A person may seek contribution* from any other person who is liable or may be liable under section 12 during or following a civil action brought under this act. However, a person that is participating in the allocation process described in section 11f or 11g shall not be subject to a contribution action during the pendency of that allocation process. *This subsection shall not diminish the right of a person to bring an action for contribution in the absence of a civil action by the state under this act.* The court shall consider all of the following factors in allocating response activity costs and damages among liable persons:

(a) Each person's relative degree of responsibility in causing the release or threat of release.

(b) The principles of equity pertaining to contribution.

(c) The degree of involvement of and care exercised by the person with regard to the hazardous substance.

(d) The degree of cooperation by the person with federal, state, or local officials to prevent, minimize, respond to, or remedy the release or threat of release.

(e) Whether equity requires that the liability of some of the persons should constitute a single share. [Emphasis added].

Subsection 12c(1) provides for severing liability when the harm is *divisible*; subsection 12c(2) provides the alternative of holding persons jointly and severally liable when there is *indivisible* harm. The essence of Forest City's position seems to be that Leemon Oil and the dry cleaners should be held jointly and severally liable for an indivisible harm because Leemon Oil did not meet its burden under

subsection 12c(1) to show divisible harm. However, Forest City has misconstrued the trial court's analysis: the trial court did not find that Leemon Oil was severally liable under subsection 12c(1), but rather treated the Forest City claim against Leemon Oil as one for *contribution* under subsection 12c(3).

The flaw in Forest City's argument is its assumption that it can shift *all* of its recovery costs to Leemon Oil if there is indivisible harm. This position is indefensible because it was disputed at trial whether *Forest City itself* caused or contributed to the harm, and it is apparent from the trial court's findings that it attributed some fault to Forest City (although the court did not find that either Forest City or Leemon Oil acted deliberately).

Further, while Forest City places great emphasis on the question of who *caused* the contamination, we note that the "indivisible" harm provision for joint and several liability in subsection 12c(2) uses the phrase "*cause or contribute*" (emphasis added). There is ample basis in the record to support the trial court's finding that Forest City contributed to the "indivisible harm" for purposes of § 12c and, hence, is itself jointly and severally liable. Common sense dictates that the Legislature did not intend to allow a person who is liable under § 12 of the MERA, MCL 299.612; MSA 13.32(12), to escape liability by bringing a cause of action under § 12 against another liable person.

Once it is determined that these parties are jointly and severally liable, the critical issue becomes one of contribution. Here, the trial court did not divide the harm under subsection 12c(1), but rather applied the statutory criteria in subsection 12c(3) in determining

the amount of contribution, if any, that should be paid by Leemon Oil to Forest City. Forest City has not established any basis for finding that this constituted legal error. The provision in subsection 12c(2) for "indivisible harm" does not support a contrary result where there is evidence that Forest City is jointly liable for an indivisible harm because Forest City *caused or contributed* to the indivisible harm. Thus, as the trial court correctly observed in denying Forest City's motion for posttrial relief, "the issue raised by the plaintiff concerning the indivisibility of harm is irrelevant under §12c." Instead, the criteria in subsection 12c(3) are applicable. The trial court did not err with regard to this ground.

B

Forest City next raises a related argument that the trial court erred in apportioning less than one percent of the total cleanup costs to Leemon Oil. When reviewing an equitable determination reached by the trial court, we review the conclusion de novo, but we review the supporting findings of fact for clear error. See *Michigan Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992).

The trial court found that the *total* response costs contracted for by Forest City (including both past and future costs) was $1,399,501. At trial, there was evidence that only approximately eleven percent of this cost was attributable solely to BTEX contamination. The remaining eighty-nine percent was attributable either to solely chlorinated solvents contamination or to combined contamination of both BTEX and chlorin-

ated solvents contaminants.[4] In essence, the lower court computed Leemon Oil's liability by beginning with eleven percent of $1,399,501, which is $153,945. Further, applying the factors in subsection 12c(3), the trial court concluded that it would be inequitable to allow contribution of more than $153,945 to Forest City. The factors considered by the trial court included its findings that (1) Leemon Oil had nothing to do with the chlorinated solvents, (2) the area of contamination containing chlorinated solvents was materially greater than the area containing BTEX alone, and (3) unlike the BTEX contamination, there was no dispute regarding the source of the chlorinated solvents. Thus, the trial court concluded that it was inequitable to have Leemon Oil share in the costs common to both BTEX and chlorinated solvents contamination. This conclusion was amply supported by the evidence.

Forest City nonetheless claims that it is inequitable to hold Forest City liable for such a large percentage of the cleanup costs of the intermingled "indivisible" contamination, because Forest City claims it lacked fault for the discharge. However, there was evidence that Forest City had fault (i.e., failing to reveal the existence of a septic tank system from 1969 until 1990). As between Forest City and Leemon Oil, Forest City is the only party who should be charged with responsibility for the chlorinated solvents contamination. The trial court's conclusion was not inequitable on these facts.

---

[4] Contrary to Forest City's argument on appeal, the trial court's findings reflect its understanding that costs common to both types of contamination were included in the eighty-nine percent figure.

The trial court's final step in determining the amount of Leemon Oil's contribution was to take the cost attributed solely to BTEX contamination ($153,945) and determine the percentage of fault that should be attributed to Leemon Oil. The trial court concluded that the percentage attributable to Leemon Oil should not exceed the percentage that the jury verdict attributed to Leemon Oil (4.5 percent). Hence, by multiplying $153,945 by 4.5 percent, the trial court set Leemon Oil's contribution at $6,927.

The trial court took into consideration the fact that Leemon Oil was a tenant at the gas station only for a short portion of the station's twenty-five-year history. In its December 1, 1993, order, the court stated: "Logically one must conclude that gasoline product contamination commenced with the use of the first gasoline pumps installed and ended when the gasoline storage tank was removed from the earth." Forest City claims that the trial court was speculating about other spills, and, without proof of such spills, liability for all BTEX contamination should have been allocated to Leemon Oil on the basis of the 1983 spill. We disagree.

Although the 1993 spill was the only major spill proved, there was testimony that it was cleaned up in a timely fashion. The thoroughness of the cleanup, as well as the issue of how much, if any, gasoline remained after the cleanup was an issue of fact. The trier of fact could reasonably conclude, upon the strength of Leemon Oil's expert's testimony, that the BTEX contamination found several years later was not caused by the 1983 spill.[5]

---

[5] The presence of diesel fuel at the site suggests another source of contamination. Leemon Oil's expert also testified that overfills may have

Regardless of the source of contamination, it was within the range of evidence for the trier of fact to find that Leemon Oil was not responsible, or at least was not solely responsible, for the entire BTEX contamination. The percentage attributable to Leemon Oil then became a factual issue, and the trial court decided to use the jury verdict to determine a percentage of contribution attributable to Leemon Oil. We see no error.

C

Forest City next claims that the trial court abused its discretion in permitting Leemon Oil's hydrogeological expert, Paul Muthig, to testify about his opinion regarding two matters that Forest City claims were not disclosed in discovery. We disagree.

In discovery, Forest City had submitted interrogatories requesting a detailed description of Leemon Oil's expert's anticipated testimony. It is undisputed that Leemon Oil's generic response[6] was never supplemented. After the interrogatories, Forest City deposed Leemon Oil's expert, Muthig, on January 13 and August 31, 1992, and trial commenced about six months after the August deposition.

At trial, Muthig testified about how fluids permeate soil, leach the groundwater table, and then move in the direction of groundwater as a "plume." He also described distinctions between plumes for a single release and plumes for a continuous release of contaminants. Muthig testified that, in preparing his opin-

occurred and that there was also a possibility of a leak in the tank, although there was no direct evidence of this.

[6] Leemon Oil's response was essentially that the expert's testimony would consist of a response to plaintiffs' allegations.

ion, he had reviewed data developed by other consultants who had worked at the contaminated site, inventory and test information for the tanks, and photographs of the site. When Leemon Oil's counsel asked Muthig whether the contamination found in the groundwater was consistent with a single (i.e., 1983 only) or long-term release, plaintiffs' attorney objected, asserting surprise. The trial court permitted Muthig to testify that the plume was consistent with a long-term continuous release rather than a single release, and that the continual release occurred sometime in 1986 or 1987 and 1988.

After a careful review of the record, we cannot conclude that the trial court abused its discretion in allowing Muthig to give opinion testimony regarding the type of release that caused the plume. Although Leemon Oil did not supplement its answers to interrogatories, the subject matter and substance of Muthig's expert testimony was disclosed during the depositions. The substance of the trial testimony was consistent with the deposition testimony because, in both cases, Muthig testified that he had insufficient data to identify the specific source or sources of contamination, but that the vast majority of the contamination could not have been a single release attributable to the 1983 spill. Forest City has no basis for claiming that it was surprised by Muthig's testimony that the plume was consistent with a long-term continuous discharge because in his deposition Muthig had identified leaky underground tanks as a possible source of contamination. This would be consistent with a long-term continuous discharge. Moreover, the nature of the plumes was a basic issue in this case that was addressed by plaintiffs' own witnesses (Joel

Hunt and George Kunkle). Nothing in the record indicates that Forest City was prevented from effectively cross-examining or presenting rebuttal testimony.

The more significant issue is whether Muthig should have been allowed to give an opinion regarding the possible time of contamination because this opinion was not disclosed in depositions or in supplemental answers to interrogatories before trial. The fact that Muthig disagreed with the calculations of Forest City's expert (Kunkle) with regard to groundwater velocity is clear from Muthig's August deposition. Muthig also testified in his deposition that he did not plan to do any velocity calculations before trial. Although Forest City argues that he offered a new opinion at trial by using groundwater velocities to estimate a time for the release of BTEX contamination, the velocity that he used was actually an average of velocities in existing reports with which Forest City was familiar. (Indeed, Forest City's expert used the same Techna Corporation computations.) Therefore, while Muthig's opinion regarding when the contamination occurred was not disclosed to plaintiffs before trial, the information upon which it was based was known to plaintiffs. There is nothing in the record to show that Forest City's counsel could not effectively cross-examine Muthig with regard to this information. On the facts of this case, we see no error.

Forest City's alternative argument that Muthig was not qualified to give expert testimony regarding the above opinions is also rejected. Whether a witness is an expert is within the trial court's discretion and will not be set aside absent an abuse of discretion. *Price v Long Realty, Inc,* 199 Mich App 461, 468; 502 NW2d 337 (1993). The record reflects that Muthig had both

work experience and training in the area of hydrogeology related to remediating hazardous waste. The fact that Muthig consulted with staff at his company does not demonstrate that he was unqualified because an expert may base an opinion on hearsay information or on findings and opinions of other experts. See *People v Dobben*, 440 Mich 679, 695-696; 488 NW2d 726 (1992). Therefore, any limitations in Muthig's knowledge go to the weight, not the admissibility, of his testimony. See *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 175; 530 NW2d 772 (1995).

D

Forest City next contends that the trial court abused its discretion in refusing to admit a videotape prepared on the day of the 1983 spill by a television station, showing the area of the property covered by the gasoline. We find no abuse of discretion.

The requirement of authentication as a condition precedent to admissibility is satisfied by evidence that the matter in question is what its proponent claims. MRE 901. However, even if authenticated, proffered evidence may be excluded because of some other bar to admissibility such as lack of relevancy, undue prejudice, confusion, or waste of time. MRE 403. *People v Jenkins*, 450 Mich 249, 260; 537 NW2d 828 (1995). Here, there were numerous still photographs that were admitted. The trial court was concerned both about authentication (i.e., that Roseville Fire Department Sergeant Jack Bruner would not be able to explain the editing of the videotape) and about MRE 403 considerations. Having reviewed the videotape, we conclude that the trial court's concerns were

justified and that its decision to exclude the video-tape was not an abuse of discretion.

E

The trial court found that Forest City's nuisance claim was barred by the statute of limitations, because it was based on one spill that occurred in 1983. Forest City next asserts several errors arising out of the trial court's refusal to give a "continuing nuisance" instruction to the jury, because, according to Forest City, the movement of contaminants through groundwater and soil can be a continuing nuisance. We see no errors.

MCL 600.5805(8); MSA 27A.5805(8) provides a three-year limitation period for actions for injuries to property. *Horvath v Delida*, 213 Mich App 620, 623-624; 540 NW2d 760 (1995). Pursuant to the general accrual statute, MCL 600.5827; MSA 27A.5827, the claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Horvath*, at 624. This has been inter-preted to mean that the cause accrues on the date that the plaintiff was harmed by the defendant's negli-gent act, as opposed to the date that the defendant acted negligently. *Id.* The burden of establishing a bar imposed by a statute of limitations is normally on the party asserting the defense. *Kuebler v Equitable Life Assurance Society*, 219 Mich App 1, 5; 555 NW2d 496 (1996).

Here, Forest City did not file its complaint setting forth its nuisance claim until August 9, 1990. There-fore, absent some exception to the statute of limita-tions, Forest City's nuisance claim would be barred

because its leasehold interest in the property was harmed on the date of the spill (August 9, 1983).

The only exception that might apply here is the discovery rule. If the discovery rule applies, a claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence should have discovered (1) an injury and (2) the causal connection between the injury and the defendant's breach of duty. *Lemmerman v Fealk*, 449 Mich 56, 66; 534 NW2d 695 (1995). Here, the discovery rule was presented to the jury in a supplemental verdict form. The jury concluded that Forest City actually discovered the nuisance condition in November 1988, but that Forest City should have discovered the alleged nuisance condition through the exercise of reasonable diligence in August 1983. On appeal, Forest City contends that there was insufficient evidence for the jury to find that Forest City should have discovered the alleged nuisance condition in 1983.

We see no error. There was evidence that Forest City's agents—its store manager and district manager—went out to the scene of the spill; their knowledge of the spill may be imputed to the corporation. See *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213-214; 476 NW2d 392 (1991). Therefore, the material question is whether in 1983 Forest City, through the exercise of reasonable diligence, should have discovered (1) the injury and (2) the causal connection between the contamination and Leemon Oil's breach of duty not to contaminate.

Forest City contends that, because there was an extensive cleanup in 1983, and both the cleanup company and a Department of Natural Resources representative were satisfied with the cleanup, Forest City

had no reason to believe that the property was contaminated after the spill. However, on the record presented, reasonable jurors could find that Forest City did not make adequate inquiries, order appropriate testing, or otherwise exercise reasonable diligence in August 1983 to determine whether the cleanup was adequate to remove all the contaminants. (Indeed, if the testimony of Rod Marques, a Forest City vice president, is believed, no investigative work was done until 1988 when Forest City attempted to sell its leasehold interest.)

In sum, because reasonable jurors could reach different conclusions regarding whether Forest City should have discovered the alleged nuisance in August 1983, the trial court properly denied Forest City's motion for judgment notwithstanding the verdict based on this theory. Therefore, Forest City was not entitled to a judgment that its claim was not barred by the statute of limitations. Alternatively (assuming that Forest City's request for a new trial is based on a challenge to the weight of the evidence rather than its sufficiency), the trial court did not abuse its discretion in denying a new trial. Forest City's nuisance claim is barred by the statute of limitations.[7]

---

[7] Forest City also separately alleges that the trial court erred in failing to give an instruction regarding continuing nuisance. However, there was insufficient evidence of a continuing nuisance to warrant such an instruction because the nuisance claim itself was based on a single event (the 1983 spill). A continuing wrong is established by continuing tortious *acts*, not by continual harmful effects from an original, completed act. *Horvath, supra* at 627.

F

With regard to its nuisance claim, Forest City also contends that the trial court erred in giving an instruction regarding comparative negligence because this defense is unavailable in a case involving an absolute nuisance to real property. However, because the trial court correctly determined that Forest City's nuisance claim was barred by the statute of limitations, this claim is moot and we need not address it. *Contesti v Attorney General*, 164 Mich App 271, 278; 416 NW2d 410 (1987).

G

Forest City alternatively contends that, even if the comparative negligence *instruction* with regard to its nuisance claim was proper, the jury's finding that Forest City was comparatively negligent should be vacated because Forest City's conduct did not contribute to either the 1983 spill or the resulting contamination. For the reasons discussed in preceding sections, this issue is also moot and need not be addressed. Forest City's nuisance claim was properly barred by the statute of limitations.

H

Forest City next contends that the trial court erred in denying its motion for a new trial because the jury's verdict that there was no waste or breach of contract is inconsistent with its finding regarding the nuisance claim. However, because Forest City's briefs with regard to this issue are so cursory that they fail to cite any applicable standards, we decline to review this issue. *Community Nat'l Bank v Michigan Basic*

*Property Ins Ass'n*, 159 Mich App 510, 520-521; 407 NW2d 31 (1987).

I

Forest City next claims that the trial court erred in granting summary disposition in favor of Leemon Oil with regard to Forest City's trespass claim.[8] In particular, Forest City contends that the gasoline contamination migrated from the leased premises to the surrounding and underlying property and that this "unauthorized invasion" falls within the definition of trespass. In light of *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995) (in which we expressly rejected a claim that an accidental gasoline spill could constitute a trespass), we disagree. There was no error.

J

Forest City next claims that the trial court abused its discretion in awarding Leemon Oil $98,000 in mediation sanctions, contending that such an award is unfair where the case involved equitable issues under the MERA. The mediation panel that heard all of Forest City's claims against Leemon Oil awarded $125,000 against Leemon Oil and in favor of Forest City. Forest City rejected the award. As noted previously, a judgment was eventually entered against Leemon Oil in the amount of $6,927.

The purpose of the mediation sanction rule, MCR 2.403(O), is to encourage settlement by placing the burden of litigation costs upon the party who insists

---

[8] Although it is not entirely clear from the record (and not addressed by Forest City's brief) it appears that the trial court granted summary disposition under MCR 2.116(C)(8), on the pleadings alone.

upon trial by rejecting a proposed mediation award. *Watkins v Manchester*, 220 Mich App 337, 344; 559 NW2d 81 (1996). A court may submit to mediation any civil action when the relief sought is primarily money damages or division of property. MCR 2.403(A)(1). Although a mediation panel can determine an equitable claim in determining the amount of damages, it cannot make a separate award for equitable relief. MCR 2.403(K)(3); *Dane Constr, Inc v Royal's Wine & Deli, Inc*, 192 Mich App 287, 293; 480 NW2d 343 (1991).

Forest City contends that because the finder of fact at trial considered "equitable *issues*," the verdict necessarily is one for "equitable *relief*," within the meaning of MCR 2.403(O). Forest City correctly notes that, if equitable relief is awarded in an action, this does become a relevant factor in determining if mediation sanctions should be ordered pursuant to MCR 2.403(O)(5), which states:

> If the verdict awards equitable relief, costs may be awarded if the court determines that
>
> (a) taking into account both monetary relief (adjusted as provided in subrule [O][3]) and equitable relief, the verdict is not more favorable to the rejecting party than the evaluation, and
>
> (b) it is fair to award costs under all of the circumstances.

The problem with Forest City's approach is that "equitable relief" (as used in MCR 2.403[O][5]) is not the same as an "equitable issue." Black's Law Dictionary (5th ed), p 484, defines "equitable relief" as "[t]hat species of relief sought in a court with equity powers as, for example, in the case of one seeking an injunction or specific performance instead of money dam-

ages." In other words, the fact that the MERA claim required an equitable apportionment (i.e., an "equitable issue") does not change the fact that the resulting judgment was for monetary relief only (i.e., not for "equitable relief" such as specific performance, an injunction, and so forth).

Accordingly, Forest City's claim based on MCR 2.403(O)(5) fails because Forest City did not receive a verdict for equitable relief. Although the trial court may have considered "equitable issues" in determining the amount of contribution under the MERA, in the resulting verdict Forest City received only monetary relief. There was no error in the trial court's award of mediation sanctions.

K

Forest City also contends that the trial court abused its discretion in awarding costs to Leemon Oil, rather than to Forest City, because (according to Forest City) Forest City was the prevailing party on the entire record. We disagree.

MCR 2.625(B)(2) provides:

> Actions With Several Issues or Counts. In an action involving several issues or counts that state different causes of action or different defenses, the party prevailing on each issue or count may be allowed costs for that issue or count. If there is a single cause of action alleged, the party who prevails on the entire record is deemed the prevailing party.

Forest City correctly contends that it would be appropriate to treat Forest City's claims as a "single cause of action" for purposes of this rule because the claims arose out of the same transaction. *Klinke v Mitsubishi Motors Corp*, 219 Mich App 500, 519-520; 556 NW2d 528 (1996). However, this does not resolve

whether Forest City or Leemon Oil should be deemed the prevailing party.

The fact that Forest City recovered less than the full amount of damages sought is not dispositive of whether it was the prevailing party. *McMillan v Auto Club Ins Ass'n*, 195 Mich App 463, 466; 491 NW2d 593 (1992). On the other hand, mere recovery of some damages is not enough; in order to be considered a prevailing party, that party must show, at the very least, that its position was improved by the litigation. *Ullery v Sobie*, 196 Mich App 76, 82; 492 NW2d 739 (1992); *Stamp v Hagerman*, 181 Mich App 332, 337; 448 NW2d 849 (1989).

The critical factor, as recognized by the trial court, is the language of MCR 2.403, which addesses mediation sanctions. MCR 2.403(O)(6) states:

> For the purpose of this rule, actual costs are
>
> (a) those costs taxable in any civil action, and
>
> (b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the mediation evaluation.
>
> For the purposes of determining taxable costs under this subrule *and under MCR 2.625*, the party entitled to recover actual costs under this rule shall be considered the prevailing party. [Emphasis added.]

We read MCR 2.625(B)(2) and MCR 2.403(O)(6) together to conclude that the party entitled to actual costs under the mediation rule for a cause of action shall also be deemed the prevailing party under MCR 2.625(B)(2) on the entire record. Accordingly, the trial court committed no error in concluding that Forest City was not the prevailing party, and in allowing

Leemon Oil to file its bill of costs pursuant to its motion for mediation sanctions.

L

In its cross appeal, Leemon Oil contends that the trial court erred in denying its motion for summary disposition on the basis that Forest City's claims were barred under Michigan's no-fault act. However, we do not address this issue because our rulings regarding Forest City's trespass, nuisance, and waste claims render this claim moot (as Leemon Oil has conceded).

M

Leemon Oil next contends that the trial court should have granted a directed verdict with regard to all of Forest City's claims because the opinions of Forest City's experts (Kunkle and John Lamb) lacked factual support.[9] Viewing the evidence presented at trial in the light most favorable to Forest City (the nonmoving party), *Lamson v Martin (After Remand)*, 216 Mich App 452, 455; 549 NW2d 878 (1996), the jury could not have found that the entire BTEX contamination was caused by the 1983 spill. However, there was substantial evidence from which the jury could have concluded that, more likely than not, the 1983 spill was part, or even a substantial part, of the BTEX contamination. While there may be grounds for attacking the weight to be accorded to the evidence provided by Forest City's experts, the record does not support

---

[9] Leemon Oil's related issues (admissibility of expert testimony and fire department records) were not properly preserved and thus will not be addressed on appeal. *People v Yarger*, 193 Mich App 532, 540, n 3; 485 NW2d 119 (1992); and see *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995).

Leemon Oil's position that the testimony was based on speculation. Reasonable inferences were made in this case regarding the 1983 spill being a source of the BTEX contamination. Accordingly, the trial court did not err in denying Leemon Oil's motion for a directed verdict.

N

Finally, Forest City claims on appeal that the trial court abused its discretion in awarding Leemon Oil $38,000 in expert witness fees. Leemon Oil had claimed $40,421.64 in expert witness fees incurred after mediation. However, following oral argument, the trial court awarded $38,000. It was not an abuse of discretion for the trial court to decide this issue without holding an evidentiary hearing, given the parties' briefing of this issue, the record before the trial court, and the trial court's familiarity with the circumstances of this case. *Giannetti Bros Constr Co v Pontiac*, 175 Mich App 442, 450; 438 NW2d 313 (1989).

The trial court's decision is affirmed in all respects.

Affirmed.