## HORVATH v DELIDA

Docket No. 170077. Submitted May 2, 1995, at Grand Rapids. Decided
September 29, 1995, at 9:00 A.M. Leave to appeal sought.

John J. and Lucille Horvath brought an action in the Roscommon
Circuit Court against Donald L. and Susanne M. Delida, seek-
ing damages for injury to their property as a result of flooding.
The damage was allegedly caused by the defendants' dredging
of a lake. The court, Carl L. Horn, J., denied the defendants'
motion for a directed verdict based on the expiration of the
period of limitation and entered a judgment for the plaintiffs
consistent with the verdict of the jury. The defendants ap-
pealed.

The Court of Appeals *held:*

1. The trial court erred in denying the defendants' motion for
a directed verdict based on the expiration of the period of
limitation.

2. A cause of action for flooding, overflow, or seepage that
results in property damage that is permanent as opposed to
temporary accrues at the time the land is first visibly damaged.
The plaintiffs' cause of action accrued more than three years
before their complaint was filed. The plaintiffs' inability to
know of or measure their ultimate damages did not toll the
running of the three-year period of limitation.

3. The defendants' reliance on the continuing-wrongful-acts
doctrine is misplaced.

4. The defendants should have moved for summary disposi-
tion before the trial. However, their failure to seek pretrial
dismissal does not warrant a conclusion that they abandoned
their affirmative defense based on the statute of limitations.

Reversed.

1. TORTS — ACTIONS — ACCRUAL OF ACTIONS — FLOODING.

A cause of action for flooding, overflow, or seepage of water that
results in property damage that is permanent as opposed to

REFERENCES

Am Jur 2d, Limitation of Actions § 135; Waters §§ 366-368.
See ALR Index under Limitation of Actions; Floods and Flooding;
Seepage; Waters and Watercourses.

temporary accrues at the time the land is first visibly damaged; a property owner's inability to know of or measure the damage to the property does not toll the running of the period of limitation.

2. LIMITATION OF ACTIONS — CONTINUING WRONGFUL ACTS — TORTS.

The period of limitation applicable to an action regarding wrongful acts of a continuing nature will not begin to run until the wrong is abated; a separate cause of action can accrue each day that the tortious conduct continues; a continuing wrong is established by continued tortious acts, not by continued harmful effects from an original, completed act.

*Douglas C. Dosson,* for the plaintiffs.

*Read & Sharp* (by *John W. Sharp* and *Michael J. Swogger*), for the defendants.

Before: DOCTOROFF, C.J., and HOLBROOK, JR., and CORRIGAN, JJ.

HOLBROOK, JR., J. In this case alleging negligent dredging, defendants appeal as of right from an adverse judgment, entered following a jury verdict, that awarded plaintiffs $45,000 as compensation for damage to their property as a result of flooding. We reverse.

I

In 1972, defendants purchased property at the north end of West Twin Lake in Roscommon County, and in 1976, built a home on the property. In 1975, plaintiffs purchased approximately three acres near, but not on, West Twin Lake. Plaintiffs improved their property by building a home, storage barn, garage, woodshed, and two chicken coops, clearing and planting trees, putting in a lawn, and developing two fenced gardens. Defendants' property was north of, and did not abut, plaintiffs' property.

At the time that the parties purchased their respective properties, West Twin Lake was surrounded by a marshy lagoon, fed by underground springs or aquifers. Defendants decided to dredge portions of the marsh area on their property to improve the swimming area and maintain the water level. Defendant Donald Delida applied for a dredging permit from the Department of Natural Resources in 1979 to change and deepen the contour of the lake. After a public hearing, at which plaintiffs attended and objected on the basis of potential flooding, the application was approved and defendants began dredging, removing three to five feet of material from the bottom of the lake.

There is no dispute that the lake's water level rose continuously for several years after the dredging. The parties dispute, however, the cause of the water level's rise. Plaintiffs attribute the rise to defendants' dredging of the lake, while defendants attribute the rise to increased precipitation levels. The parties also dispute the overall amount that the water level rose after the dredging; plaintiffs allege five feet, while defendants allege two feet.

Plaintiffs initially noticed the water level rising in 1983, the year after the dredging occurred. By 1985, a marsh area on their property, which had been dry in 1978, was continuously wet. In 1986, plaintiffs erected a temporary dock in the marsh from two trees that had died as a result of the flooding. In 1987, water flooded one of plaintiffs' fenced gardens, entered their garage, and reached within 125 feet of their house. Between 1988 and 1990, flooding consumed another twenty-five feet of plaintiffs' property, including their other garden, and killed numerous mature trees. Sometime in 1990 or 1991, water entered plaintiffs' house, and in 1992, their well and septic system failed.

Plaintiffs filed this action in July 1992, alleging

that defendants negligently dredged by opening underground springs and causing the water level of the lake to rise and flood plaintiffs' property.[1] Plaintiffs sought damages to compensate them for the value of their property, which they claimed had been permanently and completely destroyed. In their answer to plaintiffs' complaint, defendants denied being negligent and asserted the affirmative defense that plaintiffs' claim was barred by the statute of limitations.

In the midst of plaintiffs' proofs at trial, defendants moved for a directed verdict on the basis that the period of limitation had expired. The trial court denied the motion, adopting plaintiffs' argument that their cause of action was not time-barred because some damage to plaintiffs' property was still occurring within the limitation period. The jury returned a verdict for plaintiffs, awarding damages of $45,000, the stipulated value of plaintiffs' property. Defendants appeal as of right from the judgment entered following the jury's verdict.

II

Defendants assert that the trial court erred in denying their motion for a directed verdict based on the expiration of the period of limitation. We agree and reverse.

A

The statutory period of limitation for injury to property is three years. MCL 600.5805(8); MSA

---

[1] Plaintiffs also brought claims of nuisance and governmental taking against the Department of Natural Resources, and claims of a statutory violation and governmental taking against Roscommon County. Defendants the DNR and Roscommon County were subsequently dismissed as parties. Thus, the term "defendants," as used throughout this opinion, denotes only defendants Delida.

27A.5805(8). The general accrual statute, MCL 600.5827; MSA 27A.5827, provides that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Our Supreme Court has held that an ordinary negligence claim accrues, pursuant to § 5827, on the date that the plaintiff was harmed by the defendant's negligent act, as opposed to the date that the defendant acted negligently. *Stephens v Dixon,* 449 Mich 531, 534-535; 536 NW2d 755 (1995); *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 150-151; 200 NW2d 70 (1972). The rationale behind the *Stephens-Connelly* interpretation of the accrual statute is analogous to that behind application of a discovery rule: to prevent a plaintiff's valid cause of action from being barred before an injury has occurred. *Stephens, supra; Larson v Johns-Manville Sales Corp,* 427 Mich 301, 309; 399 NW2d 1 (1986). Thus, a plaintiff's cause of action for tortious injury accrues when all the elements of the cause of action have occurred and can be alleged in a proper complaint. *Stephens, supra* at 539.

We acknowledge that determining the accrual date of a cause of action for property damage as a result of flooding can be difficult. A summary of the general rules, as stated in 78 Am Jur 2d, Waters, § 367, pp 799-800, is instructive:

> In determining when statutes of limitation commence to run against damage from an overflow of land caused by artificial construction or obstruction, the courts have, in the main, distinguished between (1) permanent, direct, or original injury, and (2) temporary, transient, recurring, continuing, or consequential injuries.
> In the case of a permanent, direct, or original injury, the courts are generally agreed that such

injury gives rise to but one cause of action, which covers all damages, past, present, and prospective. But the courts do not agree as to whether the limitation period starts to run from the time a construction or obstruction causing overflow is completed or from the time the land is actually harmed by overflow. There is a line of cases which takes the view that, as regards an injury of this kind, the limitation period commences to run when the construction or obstruction is completed. In other cases, however, it has been held that irrespective of the nature of the injury as original or permanent, the limitation period begins to run when the land is actually harmed by an overflow, or when such harm is manifest and discoverable, or is substantial.

Where the injury or wrong is classified by the courts not as original or permanent, but as temporary, transient, recurring, "continuing," or consequential in nature, it has been held that the limitation period starts to run only when the plaintiff's land is actually harmed by overflow, and that for the purpose of the statute of limitations, each injury causes a new cause of action to accrue, at least until the injury becomes permanent.

Michigan, and a majority of jurisdictions, holds that a cause of action for flooding, overflow, or seepage that results in property damage that is permanent as opposed to temporary accrues at the time the land is first visibly damaged. See *Strong v Neidermeier*, 230 Mich 117, 122-123; 202 NW 938 (1925). Plaintiffs' inability to know of or measure their ultimate damages did not toll the running of the period of limitation. *Stephens, supra* at 538. As was stated in *Connelly, supra* at 151:

Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run. Later damages may result,

but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred.

Here, defendants' alleged negligent act occurred in 1982 when they dredged the lake. There was no ongoing conduct of defendants that could be abated to end a continuous tort. Plaintiffs did not suffer any immediate injury from the dredging, but they concede that they first noticed the lake level rising in 1983 and, as early as 1985, their property had suffered damage. Under these facts, we are compelled to conclude that plaintiffs' cause of action for ordinary negligence accrued more than three years before their complaint was filed in 1992. To hold otherwise would undermine the important policies underpinning statutes of limitation, including preventing plaintiffs from sleeping on their rights, yet still providing them with reasonable opportunities to bring suit and providing defendants with fair opportunities to defend. *Stephens, supra* at 535-536; see also *Chase v Sabin,* 445 Mich 190, 199; 516 NW2d 60 (1994). Accordingly, plaintiffs' negligence claim is time-barred.

### B

To avert this result, plaintiffs rely on the continuing-wrongful-acts doctrine, arguing that the continuous flooding of their property tolled the running of the limitation period until the time of the most recent wrong. Under the facts of this case, we find no merit to this argument.

Where a defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that the defendant's tortious conduct continues. See *Oak-*

*wood Homeowners Ass'n, Inc v Ford Motor Co,* 77 Mich App 197, 220, n 7; 258 NW2d 475 (1977). Where the continuing-wrongful-acts doctrine applies, the damages recoverable are limited to those occurring within the applicable limitation period and, where appropriate, after the filing of the complaint. See *Slayton v Michigan Host, Inc,* 144 Mich App 535, 556; 376 NW2d 664 (1985). Michigan appellate courts have applied this doctrine in limited circumstances.[2] See, e.g., *Defnet v Detroit,* 327 Mich 254, 258; 41 NW2d 539 (1950) (trespass); *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 510; 398 NW2d 368 (1986) (civil rights); *Moore v Pontiac,* 143 Mich App 610, 614; 372 NW2d 627 (1985) (nuisance). But see *Asher v Exxon Co USA,* 200 Mich App 635, 639; 504 NW2d 728 (1993) (products liability).

In seeking to apply the continuing-wrongful-acts doctrine in this case, plaintiffs misapprehend the crux of the doctrine: a continuing wrong is established by continual tortious *acts,* not by continual harmful effects from an original, completed act. See, e.g., *Defnet, supra* (the continuing-wrongful-acts doctrine applied where the defendants' maintenance of an *active* sewer on the plaintiffs' property for nearly thirty years constituted a continuing trespass); *Difronzo v Port Sanilac,* 166 Mich App 148; 419 NW2d 756 (1988) (the defendants' building of a harbor and necessary facilities on Lake Huron bottom land adjacent to the plaintiff's property constituted an ongoing nuisance); *Moore, supra* (operation of a sanitary landfill constituted a

---

[2] One federal court has noted that, while Michigan courts had applied the continuing-wrongful-acts doctrine to trespass and nuisance claims, the doctrine had not been applied to a claim of "continuing negligence." *Grunch v United States,* 538 F Supp 534, 537 (ED Mich, 1982). In this case, the trial court specifically rejected plaintiffs' request for a jury instruction on nuisance, finding that plaintiffs' claim was for negligence.

continuing nuisance); *Oakwood Homeowners Ass'n, Inc, supra* (operation of manufacturing plants that caused air pollution constituted a continuing tort); *Hodgeson v Genesee Co Drain Comm'r,* 52 Mich App 411; 217 NW2d 395 (1974) (maintenance of storm sewer drain under the plaintiffs' property, which caused periodic flooding, constituted a continuing nuisance).

Here, defendants are alleged to have committed a single tortious act in 1982 when they dredged the lake, and from that single act plaintiffs' property suffered noticeable permanent damage beginning as early as 1985 and intensifying over time. Accordingly, because plaintiffs have only established aggravated ill effects from a single tortious act, their reliance on the continuing-wrongful-acts doctrine is misplaced.

III

Finally, we believe it is important to address whether defendants abandoned their affirmative defense that the period of limitation had expired by not moving to dismiss on that basis before trial.

Plaintiffs' complaint alleged that defendants "began dredging" in 1979, and that as a result plaintiffs' property was "flooded and rendered virtually worthless." To avoid their claim being time-barred, plaintiffs' complaint further alleged that their damages "occurred on and after July 15, 1989." In both their answer and first amended answer, defendants asserted the affirmative defense of expiration of the period of limitation, declaring that "[p]laintiffs' claim is barred because of the statute of limitations applicable to the state cause of action." In their depositions, plaintiffs alleged specific damages regarding flooding of their land as early as 1986 and 1987. Notwithstanding the obvi-

ous defect in plaintiffs' cause of action, defendants did not again raise the issue whether the period of limitation had run until the midst of trial when they moved for a directed verdict on that basis. Although the trial court chastised defendants for not raising the issue before trial, the court addressed the merits of the issue and did not deny the motion solely because it was untimely.

Affirmative defenses, such as expiration of the period of limitation, must be raised in a party's responsive pleading and must be supported by factual allegations. MCR 2.111(F)(3)(a), 2.116(D)(2). The party asserting an affirmative defense has the burden to produce evidence to support it; only after such evidence has been introduced does the burden shift to the plaintiff to produce "clear and decisive evidence to negate" the defense. *Palenkas v Beaumont Hosp,* 432 Mich 527, 548, 550; 443 NW2d 354 (1989) (ARCHER, J).

In *Palenkas,* a medical malpractice case, the defendant failed to include factual allegations in its answer to support its affirmative defense under the statute of limitations, failed to move before trial for an accelerated judgment, failed to submit an affidavit or other evidence before trial to rebut the plaintiff's allegation regarding the accrual date of his cause of action (i.e., the date the plaintiff discovered a possible cause of action), and failed to present any evidence regarding the statute of limitations issue in its case in chief. *Id.* at 543-544. The Supreme Court held that the defendant's motion for accelerated judgment, brought at the close of the plaintiff's proofs, was untimely and without adequate factual support in the record, and that the defendant had, therefore, abandoned its affirmative defense of expiration of the period of limitation. *Id.* at 551.

Although the procedural facts of *Palenkas* are

similar to those of the present case, there is one important difference. Here, plaintiffs' own testimony at deposition and at trial exposed the fatal defect in their cause of action. That is, plaintiffs themselves testified that their property suffered damage as early as 1985, seven years before they filed their complaint. On the other hand, in *Palenkas*, the plaintiff's bare allegation regarding the accrual date of his malpractice claim was sufficient on its face to state a viable claim. The defendant had claimed in its motion for accelerated judgment that the plaintiff had failed to substantiate this allegation with any proffered evidence. Thus, while the facts underlying the defendant's statute of limitations defense in *Palenkas* were in dispute, there was no such factual dispute in this case.

Clearly, in light of plaintiffs' deposition testimony, defendants in this case should have moved for summary disposition before trial. MCR 2.116(C)(7). Such a motion would have promoted judicial economy and avoided expensive litigation for both parties. However, defendants' failure to seek pretrial dismissal of plaintiffs' cause of action does not alone warrant a conclusion that defendants abandoned their affirmative defense based on expiration of the period of limitation. The underlying rationale for requiring a party to provide factual support for affirmative defenses is to prevent the adverse party from being taken by surprise at trial. See MCR 2.111(F)(3)(c).[3] See also *Palenkas,*

---

[3] MCR 2.111(F)(3) provides, in pertinent part:

Affirmative Defenses. Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting

* * *

(c) a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.

*supra* at 550-551. While this rationale was applicable to the *Palenkas* case, it was of no consequence in this case because it would not have changed the substance of plaintiffs' claims or testimony. Accordingly, we conclude that defendants did not abandon their affirmative defense based on expiration of the period of limitation.

Reversed. Plaintiffs' complaint is dismissed.