*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0407p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VILLAGE OF MILFORD,

> *Plaintiff-Appellant,*

*v.*

No. 03-1597

K-H HOLDING CORPORATION, a foreign corporation;
TRW, INC., a foreign corporation,

> *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70950—Robert H. Cleland, District Judge.

Argued: September 14, 2004

Decided and Filed: November 23, 2004

Before: SUTTON and COOK, Circuit Judges; ALDRICH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Matthew J. Lund, PEPPER HAMILTON, LLP, Detroit, Michigan, for Appellant. Kenneth H. Adamczyk, BUTZEL LONG, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Matthew J. Lund, Scott L. Gorland, PEPPER HAMILTON, LLP, Detroit, Michigan, for Appellant. Kenneth H. Adamczyk, Michael F. Smith, BUTZEL LONG, Bloomfield Hills, Michigan, for Appellees.

---

## OPINION

---

COOK, Circuit Judge. This case concerns a Michigan law trespass claim and claims under the Comprehensive Environmental Response and Liability Act ("CERCLA") and Michigan's Natural Resources and Environmental Protection Act ("NREPA").

The district court granted judgment as a matter of law in favor of Defendant-Appellees K-H Holding Corporation and TRW, Inc. ("K-H" collectively) on Plaintiff-Appellant Village of Milford's trespass claim because the claim was barred by the statute of limitations. It found K-H not liable under CERCLA or NREPA because it found that Milford's costs incurred in response to a release of hazardous substances by

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

K-H were not "necessary" or "required" as the statutes respectively require, and the contamination was not "caused" by K-H, as NREPA requires.

We conclude that the district court correctly applied the three-year statute of limitations for trespass, and affirm the district court's grant of judgment notwithstanding the verdict. We conclude that the district court incorrectly applied CERCLA and NREPA to deny Milford recovery of any of its costs, vacate its judgment on those claims, and remand the case for further proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

The factual history of the trespass claim focuses on what Milford knew and when it knew it. In 1989, Milford learned that its municipal water supply wells contained two hazardous chlorinated compounds, trichloroethene ("TCE") and dicholorethene ("DCE"). In response, the Michigan Department of Natural Resources ("MDNR") required Milford to increase monitoring of its wells from once every six years, to four times per year. Milford later discovered three other hazardous chlorinated compounds in its groundwater: dichloroethane ("DCA"), trichloroethane ("TCA"), and tetrachloroethene ("PCE"). In 1994, Milford retained an environmental attorney and consultants to determine the source of contamination. Also in 1994, Milford asked MDNR to determine that K-H was a "potentially responsible party" ("PRP") with respect to the contamination. MDNR declined, and advised Milford to conduct additional studies. Milford continued to study the area's geology and groundwater contamination, and in 1996, asked the Michigan Department of Environmental Quality ("MDEQ") to identify K-H as a PRP. MDEQ did so in February 1997, based upon Milford's studies. During this time, Milford never stopped using its water, which at all times met federal safe drinking water standards.

Since about 1971, K-H has owned and operated a factory, situated uphill and 1,400 feet north of Milford's wells. K-H used TCE and TCA, which degrade to DCE and DCA, respectively. Before 1975, waste oil containing chlorinated compounds was spread by K-H and its predecessors on K-H's property. In the late 1970s and early 1980s, waste oil leaked from a dumpster onto K-H's property.

In 1993, K-H discovered that DCA, DCE, PCE, TCA, and TCE were in the groundwater on its property, and were migrating toward Milford's wells. K-H provided Milford with a report and documentation of its investigation but denied responsibility for contamination of Milford's wells. K-H began monitoring activities, which included sampling water from area residents' wells and creating new monitoring wells. In 1994, K-H began remedial measures. K-H installed a soil vapor extraction system which, after it began operation in 1997, removed contaminants from the soil at the facility. It also installed a groundwater interdiction system to stop contaminants flowing south, toward Milford's wells, in 1999.

Milford filed suit against K-H on March 1, 1999, seeking damages for trespass under Michigan law, and recovery of its costs under CERCLA, 42 U.S.C. § 9607, and NREPA, Mich. Comp. Laws § 324.20126.

A jury found K-H liable for trespass, but the court granted judgment notwithstanding the verdict for K-H, determining that the three-year statute of limitations barred the claim.

The statutory claims were tried to the bench. Before trial, the court ruled that the only attorney's fees that Milford could recover under CERCLA, if it could recover at all, were those related to determining that K-H was a PRP. After the trial, the court concluded that the CERCLA claim failed because Milford's response costs were not "necessary." The court concluded that the NREPA claim failed because Milford did not show by a preponderance of the evidence that K-H "caused" the release of contaminants, and because Milford's actions were not a "required" response to the contamination.

## II.  THE TRESPASS CLAIM

### A.  Standard of Review

When exercising jurisdiction over state claims, this court follows state law standards for granting motions for judgment notwithstanding the verdict. *J. C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1483 (6th Cir. 1991).  Michigan courts review a trial court's decision to grant judgment notwithstanding the verdict de novo. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003).  Judgment notwithstanding the verdict should be granted "only when, viewing the evidence and all legitimate inferences in a light most favorable to the non-moving party, there remain no issues of material fact upon which reasonable minds could differ." *Ewing v. City of Detroit*, 651 N.W.2d 780, 786 (Mich. Ct. App. 2002), *rev'd on other grounds*, 661 N.W.2d 235 (Mich. 2003).

### B.  The Discovery Rule

In Michigan, the statute of limitations for trespass is three years.  Mich. Comp. Laws § 600.5805(10).  The parties dispute whether CERCLA or Michigan law determines when the statute of limitations begins.  We conclude that both CERCLA and Michigan law provide the same commencement date, and that this date was more than three years before Milford filed its suit.

CERCLA provides that if a state statute of limitations provides a commencement date for a property damages claim that results from a release of hazardous substances into the environment that is earlier than the "federally required commencement date," then the statute of limitations for the state law claim will commence at the federally required date, rather than the state law date.  42 U.S.C. § 9658(a)(1).  The federally required commencement date is the date on which "the plaintiff knew (or reasonably should have known) that the . . . property damages . . . were caused by or contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4)(A).

Under Michigan's "discovery rule," a plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, (1) an injury and (2) the causal connection between the injury and the defendant's breach. *Moll v. Abbott Laboratories,* 506 N.W.2d 816, 824 (Mich. 1993).  Because Michigan courts have not considered whether the discovery rule applies to groundwater contamination cases, this court must decide based on its assumption of how the highest state court would decide the issue if confronted with it. *Miles v. Kohli & Kaliher Assoc., Ltd.*, 917 F.2d 235, 241 (6th Cir. 1990).

We assume that the Michigan Supreme Court would apply the discovery rule in this case.  The discovery rule generally applies where a plaintiff may remain unaware of an injury for a long time, and the policies behind the statute of limitations are not offended by applying the discovery rule.  The policies behind the statute of limitations include the provision of opponents with a fair opportunity to defend, elimination of "stale" claims in which evidence is likely to have been forgotten or destroyed, and protection of defendants from protracted fear of litigation. *Moll*, 506 N.W.2d at 823.

These policies are not offended by applying the discovery rule to cases of groundwater pollution.  It may take years for a tortfeasor's pollutants to reach a victim's groundwater, to detect the resulting pollution, and for the contaminee to know of contaminants' harmful effects.  Moreover, we reasonably may assume that the Michigan Supreme Court would consider parties who use hazardous substances likely to keep records of the substances they use, and more likely than those they harm to know of the danger posed by those substances.  For these reasons, we assume Michigan would apply the discovery rule to groundwater pollution cases.

The commencement date established by Michigan's discovery rule is functionally identical to CERCLA's federal commencement date.  Both rules look to when the plaintiff knew or should have known

of his potential cause of action against the defendant. *See, e.g., Presque Isle Harbor Dev. Co. v. Dow Chem. Co.*, 875 F. Supp. 1312, 1319 (W.D. Mich. 1995).

The parties do not dispute that K-H admitted to Milford in 1993 or 1994 that it had discovered a release of hazardous substances, or that Milford asked MDNR to identify K-H as a PRP in 1994. Milford argues that it was not certain that K-H caused the contamination at this time, in part because K-H denied that it was the source of the wells' contamination, despite its release of the hazardous substances.

But the discovery rule does not permit a party to await certainty. To toll the limitations period because a prospective defendant denies its liability, or because the plaintiff lacks absolute certainty as to the tortfeasor's identity, would circumvent the purpose of the statute of limitations. Because Milford knew before 1996 that K-H had released specific chemicals, that those chemicals were present in its water supply, and that there were few, if any, realistic alternative sources of contamination, it knew (or should have known) of its potential cause of action against K-H, and its trespass claim is therefore time-barred.

## C. Continuing Trespass

Milford counters by invoking the "continuing trespass" doctrine, insisting that the continuing migration of the contaminants allows recovery. We find the doctrine inapplicable under the circumstances.

To be sure, where a wrong is of a continuing nature, a defendant may recover damages resulting from that harm which occurred within the limitations period. *Horvath v. Delida*, 540 N.W.2d 760, 763 (Mich. Ct. App. 1995). "A continuing wrong is established by continuing tortious acts, not by continual harmful effects from an original, completed act." *Id.*; *see also Sable v. General Motors Corp.*, 90 F.3d 171, 176 (6th Cir. 1996).

Milford presented no evidence at trial, however, to suggest that K-H continued to release substances after March 1, 1996. Although Milford presented some evidence that pollutants released before the statutory period may have continued to move from K-H's property to Milford's wells after this time, no evidence substantiates that this resulted from further acts by K-H.

Even if further migration occurred, it was not a new act of trespass. In *Horvath*, the court held that where water seepage causes property damage, the cause of action accrues when the land is "visibly damaged." The seepage of more water without further acts by the defendant does not constitute an additional tort. *Horvath*, 540 N.W.2d at 762. In the absence of further acts by K-H, there was no continuing trespass.

## III. CERCLA

## A. Milford Incurred "Necessary" Response Costs

*1. Milford took reasonable actions*

To establish a prima facie case for cost recovery under CERCLA, a plaintiff must prove that: (1) a polluting site is a "facility" within the statute's definition; (2) the facility released or threatened to release a hazardous substance; (3) the release caused the plaintiff to incur necessary costs of response; and (4) the defendant falls within one of four categories of potentially responsible parties. *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 347-48 (6th Cir. 1998). At issue is whether Milford's costs in monitoring its wells and investigating the source of their contamination were "necessary costs of response."

Whether Milford's response costs were necessary is a mixed question of law and fact. *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995). We thus consider the issue de novo. *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.,* 240 F.3d 534, 541 (6th Cir. 2001).

In our view, certain of Milford's costs may have been necessary inasmuch as they were related to monitoring and evaluation following a release of hazardous substances. Monitoring and evaluation costs may be recovered as "removal" costs under CERCLA if they were reasonable, and the activities were not scientifically deficient or unduly costly. *See Johnson v. James Langley Operating Co.*, 226 F.3d 957, 963–64 (8th Cir. 2000); *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1219 (3d Cir. 1993).

The district court concluded that Milford's response activities "were not cost effective and environmentally sound, and did not contribute in any significant manner to directly addressing the release of contaminants from the [K-H] facility." But the court's findings of fact conflict with this conclusion.

The court found that Milford learned of contaminants in the water and then studied the situation. MDNR, upon learning of the contamination, directed Milford to increase its monitoring activities. Milford did this, and it also hired consultants, who performed and analyzed studies. As it undertook these activities, Milford met with MDNR to report on its investigation and held public meetings for discussion of the contamination and response activities. Milford undertook more studies as advised by MDNR. Milford also requested MDEQ's involvement, and MDEQ later determined that K-H was a PRP based upon Milford's studies. These activities are of the type one would reasonably conduct upon learning that one's municipal water supply had been contaminated by hazardous substances. The close involvement of MDNR and MDEQ suggests to us that at least some of these activities could be considered recoverable monitoring and evaluation costs, not "unreasonable" and not "environmentally unsound" or "scientifically deficient."

*2. Milford's actions were "removal"*

The district court also denied recovery based on its finding that Milford's monitoring and investigation costs were not recoverable as "removal" costs subject to lesser requirements under the National Contingency Plan (NCP). But Milford's costs fall squarely into the statutory definition of removal, which includes "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). The district court itself concluded that, based on § 9601(23), that "this suit is a cost recovery action for 'removal' costs, which may include preliminary investigative and evaluative costs." The court went on, however, to state that "[r]emoval actions are short-term responses . . . taken in response to an immediate threat to the public welfare or to the environment." It concluded that Milford failed at trial to present evidence "of an *immediate* threat," and therefore Milford's response "cannot properly be characterized as a 'removal' action." (*Id.*) We acknowledge the point that this court repeatedly has observed that removal actions are frequently short-term actions in response to an emergency, *see, e.g., Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 291 (6th Cir. 1991) ("Removal refers to short-term action taken to halt any immediate risks posed by hazardous wastes."); *Franklin County Convention Facilities Auth.*, 240 F.3d 540 n.3 ("Removal actions . . . usually occur in the context of an emergency, and are considered temporary solutions."). But we have never held that such characteristics are requirements for finding the costs of an action recoverable as removal costs. *See, e.g., Barmet,* 927 F.2d at 291; *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 843–44 (6th Cir. 1994) (giving removal a "broad interpretation").

The district court also denied recovery because Milford "made no effort to . . . comply with the . . . NCP in conducting its response actions." But this court has held that consistency with the NCP is not required for recovery of *monitoring and investigation costs*. *Donahey v. Bogle*, 987 F.2d 1250, 1255 (6th Cir. 1993), *vacated on other grounds*, 512 U.S. 1201 (1994).[1]

---

[1] We find nothing in CERCLA that exempts such costs from the requirements of the NCP. Nonetheless, *Donahey* is the established rule of this circuit, and we are bound to follow it.

Thus the district court erred in denying recovery on the grounds (1) that Milford's monitoring and investigation costs are not recoverable as "removal" costs and (2) that Milford failed to comply with the NCP.

*3. Safeness of the water does not negate the necessity of all response costs*

The district court evaluated Milford's response costs as not "necessary," in part because Milford's water always met federal safe drinking water standards.

Water's safeness for drinking may be an appropriate factor to consider in determining whether particular response costs were reasonable. For example, it might be unreasonable to remove all contaminants from water that is safe to drink and certain to be safe from further contamination. But where a release has occurred and there may be potential for further contamination, some response costs will almost always be reasonable, to ensure that the water remains safe. *See Artesian Water Co. v. Gov't of New Castle County*, 851 F.2d 643, 651 (3d Cir. 1988) (response costs incurred to ensure that water supply "remained uncontaminated" were reasonable). CERCLA plaintiffs cannot be expected to wait until their water is unsafe to take responsive actions.

Milford's wells were contaminated and without further study Milford could not know whether its water would become unsafe for drinking in the near future. Some monitoring and studies to evaluate the situation were reasonable under these circumstances. As a result, the present safeness of the water was not a sufficient ground upon which the district court could find that all Milford's costs were not necessary.

*4. Duplicative studies do not negate necessity*

The district court also concluded that Milford's monitoring activities were not necessary in part because the release "was already being successfully investigated and treated by K-H under the supervision of the MDEQ."

A CERCLA plaintiff's investigatory activities are not unreasonable and therefore not necessary merely because they duplicate studies that the alleged polluter has already performed. *See Artesian Water Co.*, 851 F.2d at 651 ("We find nothing in CERCLA requiring [a plaintiff] to rely solely on the state's preliminary measures, rather than to make its own appraisal."). Milford was reasonable to conduct studies of its own. MDNR directed Milford to monitor its wells and perform studies, and MDEQ relied upon Milford's studies in determining that K-H was a PRP. Further, because K-H used its studies to *deny* responsibility for the contamination of Milford's wells, it was especially reasonable for Milford to continue its efforts to learn the source of the contamination. Given that duplication in itself does not equate to unreasonableness, on remand the district court may review the duplicated efforts to reevaluate their necessity or excessiveness.

### B. Attorney's Fees

The district court held that Milford could recover only those attorney's fees incurred "in the course of determining that K-H was a PRP." We view this holding as too restrictive.

Attorney's fees for litigation-related activities are not recoverable under CERCLA. *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994). Nonetheless, "some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of [CERCLA] § 107(a)(4)(B)." *Id.* at 820. The costs must relate to activities that could be "performed by engineers, chemists, private investigators, or other professionals who are not lawyers." In *Key Tronic*, those costs were related to "work performed in identifying . . . PRP's." *Id.*

This court's decisions interpreting *Key Tronic* seem ambiguous. In *Donahey v. Bogle,* we observed that *Key Tronic* limited recovery to costs of "steps taken to finger previously unidentified parties that might

bear some legal responsibility under the terms of CERCLA for pollution of the site." 129 F.3d 838, 843 (6th Cir. 1997) (en banc), *vacated on other grounds, sub nom. Donahey v. Livingstone*, 524 U.S. 924 (1998). In *Franklin County Convention Facilities Authority*, we viewed identification of PRPs as but one example of a non-litigation activity for which a CERCLA plaintiff could recover attorney's fees, and held that *Key Tronic* allows recovery of attorney's fees for non-litigation activities that "increase[] the probability of an effective cleanup." 240 F.3d at 549-550.

Today, we clarify the rule in this circuit. A CERCLA plaintiff may recover attorney's fees if the activities for which the fees are incurred could have been performed by a non-attorney, are closely tied to an actual cleanup, are not related to litigation, and are otherwise necessary. Such activities may include, but are not limited to, identification of PRPs.

The district court found that Milford's attorney performed a variety of non-litigation activities in addition to identifying K-H as a PRP. On remand, the district court may determine that some of these activities meet our criteria for recovery of attorney's fees.

## IV. NREPA

### A. K-H Caused a Release of a Hazardous Substance

To be liable under NREPA, a defendant must have "caused" a release or threat of release of a hazardous substance, leading to the incurrence of response costs. Mich. Comp. Laws § 324.20126(1)(a). The district court found that K-H did not cause a release.

Because causation is a question of fact, this court reviews the finding for clear error. *Hasler v. United States*, 718 F.2d 202, 204 (6th Cir. 1983). Findings of fact are to be reversed only if the court is left "with the definite and firm conviction that a mistake has been committed." *Franklin County Convention Facilities Auth.*, 240 F.3d at 541 (internal citation and quotation marks omitted). "Where two logically permissible interpretations of the evidence exist, the trial judge's selection cannot be adjudged clearly erroneous on appeal." *Id.*

We assess the district court's finding that K-H did not cause the release to be clearly erroneous, given its other factual finding acknowledging that K-H used and released the hazardous substances found in Milford's wells.

### B. Milford's Response Costs Were "Required"

To be recoverable under NREPA, response costs must be "necessary." Michigan courts have read "necessary" to mean "required." *City of Port Huron v. Amoco Oil Co.*, 583 N.W.2d 215, 222 (Mich. Ct. App. 1998). One "required" activity is evaluation of a threat to public health or natural resources. *Id.*

MDNR required Milford to increase monitoring of its wells. It also advised Milford to undertake additional studies of its groundwater contamination. MDEQ considered the contamination to be "a threat to . . . Milford's water supply, the public health, and the environment." These facts evince that Milford's activities were "required" and therefore "necessary" under NREPA.

Because the district court erred in finding that K-H did not cause a release of hazardous substances, and because at least some of Milford's costs were "required," we remand the case to the district court to determine which costs were required.

## V.  CONCLUSION

We affirm the district court's grant of judgment notwithstanding the verdict against Milford.  We vacate the district court's judgment in favor of K-H Holding Corporation and TRW, Inc. on the CERCLA and NREPA claims, and remand the case for further proceedings consistent with this opinion.