# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM P. FROLING and MARILYN
FROLING,

Petitioners-Appellants,

v

CITY OF BLOOMFIELD HILLS,

Respondent-Appellee.

UNPUBLISHED
November 8, 2016

No. 327941
Tax Tribunal
LC No. 00-443766

Before: TALBOT, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Petitioners-Appellants, William P. Froling and Marilyn Froling (collectively, the Frolings), appeal as of right the opinion and judgment of the tax tribunal, which found that the true cash value (TCV) of the Frolings' property was $1.575M in 2012, $1.625M in 2013, and $1.675M in 2014. Finding no errors warranting reversal, we affirm.

In this appeal, the Frolings raise a variety of challenges to the tribunal's determination. As this Court has explained:

> Review of a decision by the [tribunal] is very limited. In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation. The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record. Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence. The appellant bears the burden of proof in an appeal from an assessment, decision, or order of the Tax Tribunal.[1]

---

[1] *Drew v Cass Co*, 299 Mich App 495, 498-499; 830 NW2d 832 (2013) (quotation marks and citations omitted).

-1-

# I. TESTIMONY OF JAMES BURTON

The Frolings' first contend that the tribunal erred under its own rules when it allowed James Burton, an engineer and expert witness called by respondent-appellee, the City of Bloomfield Hills (the City), to testify. We disagree. Like questions of statutory interpretation, the proper interpretation of an administrative rule is a question of law reviewed de novo on appeal.[2] However, this Court affords "great deference" to an administrative agency's reasonable interpretation of its own rules.[3] A decision to admit evidence is reviewed for an abuse of discretion.[4]

With regard to identifying witnesses that will be produced at a hearing before the tax tribunal, Mich Admin Code, R 792.10237(3) provides:

> A party shall submit to the tribunal and the other party or parties a prehearing statement, as required by [Mich Admin Code,] R 792.10247. The prehearing statement shall provide the other party or parties and the tribunal with the name and address of any person who may testify and with a general summary of the subject area of the testimony. A person who is not disclosed as a witness shall not be permitted to give testimony, unless, for good cause shown, the tribunal permits the testimony to be taken.[5]

The City identified Burton as a witness in its prehearing statements, including his name, address, and a description of the subject area of his expected testimony. Thus, pursuant to Rule 792.10237(3), the trial court correctly permitted Burton to testify.

The Frolings do not address Rule 792.10237. Rather, they contend that the controlling rule is Rule 792.10247. At the time of the proceedings held in this matter, Rule 792.10247 provided, in relevant part:

> (1) Except as provided by R[ule] 792.10233 or as otherwise provided by the tribunal, a prehearing conference shall be held in all proceedings before the entire tribunal for scheduling a hearing in the proceeding.
>
> (2) Not less than 14 days before the prehearing conference or as otherwise provided by the tribunal, each party shall file and exchange a prehearing statement in a form determined by the tribunal.

---

[2] *Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 64-65; 678 NW2d 444 (2003).

[3] *ABATE v Pub Serv Comm'n*, 219 Mich App 653, 661-662; 557 NW2d 918 (1996).

[4] *Becker-Witt v Board of Examiners of Social Workers*, 256 Mich App 359, 365; 663 NW2d 514 (2003).

[5] This rule, which took effect on March 20, 2013, was in effect at the time of the proceedings held in this matter, and remains in effect today. See 2013 Annual Admin Code Supp, R 792.10237(3); 2015 Annual Admin Code Supp, R 792.10237(3).

(3) The purposes of the prehearing conference are as follows:

\* \* \*

(g) To identify all witnesses.

\* \* \*

(5) The administrative law judge who conducts the prehearing conference shall prepare, and cause to be served upon the parties or their representatives, not less than 14 days in advance of hearing, an order summarizing the results of the conference specifically covering each of the items stated in the rule. The summary of results controls the subsequent course of the proceeding unless modified at or before the hearing by the tribunal to prevent manifest injustice.[6]

Burton was not listed as a witness in the tribunal's summary of results. The Frolings contend that because the summary of results "controls the subsequent course of the proceeding," the tribunal's failure to include Burton on the summary of results precluded him from testifying. We reject this strained reading of former Rule 792.10247(5). The rule does not mention the preclusion of witnesses; rather, it speaks generally of the "course of the proceeding." Further, the specific question at issue – the proper method of identifying witnesses and the consequences of failing to do so – is a topic specifically governed by Rule 792.10237(3). To the extent these rules could be read as in conflict with one another, Rule 792.10237(3), as the more specific rule, must control.[7]

Regardless, former Rule 792.10247 permitted the tribunal to amend the prehearing summary "at or before the hearing by the tribunal to prevent manifest injustice." Given that the City identified Burton in the manner specifically called for by the tribunal's rules, undoubtedly, it would have been a manifest injustice to refuse to allow him to testify solely because of the tribunal's own omission. Thus, the tribunal was well within its discretion to amend the prehearing summary at the hearing. And by allowing Burton to testify over the Frolings' repeated objections, the tribunal, in effect, amended the prehearing summary to correct its error.

The Frolings' contention that they were blindsided by Burton's presence is entirely without merit. In their own prehearing statement, the Frolings listed three witnesses by name, and also included "[a]ll witnesses that Respondent listed in its prehearing statement[.]" That the Frolings filed a prehearing statement in which they identified their witnesses establishes two relevant facts. First, the Frolings were clearly aware of the proper method of identifying those

---

[6] 2013 Annual Admin Code Supp, R 792.10247. Effective January 15, 2015, this rule was amended. 2015 Annual Admin Code Supp, R 792.10247. Identifying witnesses is no longer listed as purpose of the prehearing conference. Mich Admin Code, R 792.10247.

[7] See *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007) ("When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute").

witnesses that would be called to testify at trial, as they did so themselves. Second, the Frolings were also aware that the City had filed a prehearing statement in which its witnesses were identified. We presume that before including "[a]ll witnesses that Respondent listed in its Prehearing Statement" on their own witness list, the Frolings reviewed the City's prehearing statement, which clearly identified Burton. At best, the Frolings' apparent decision to rely solely on former Rule 792.10247 and the tribunal's prehearing summary reflects only their own misunderstanding of the tribunal's rules and procedures. But the Frolings' error forms no basis to preclude the City from presenting a duly identified witness.[8]

## II. SCOPE OF CONTINUED HEARING

The Frolings next contend that the tribunal erred by limiting the scope of the continued hearing held in this matter to cross-examination and rebuttal testimony. We disagree. The Frolings cite only MCL 24.287, a rule that governs rehearings. But as the Frolings acknowledge, the additional proceedings held in this matter were a continuation of the hearing, not a rehearing.[9] Thus, the statute has no relevance.

We further note that the only prejudice alleged by the Frolings is that they were unable to present direct testimony from their own engineers. They were not, because had they identified an engineer in their prehearing statement, they could have called such a witness to provide direct testimony on the first day of the hearing. The Frolings explain that because they were unaware that Burton would testify, they did not bring an engineering expert to testify on the first hearing date. But the Frolings had the "burden of proof in establishing the true cash value of the

---

[8] In any event, the tribunal provided the Frolings with the opportunity to conduct additional cross-examination of Burton several months after his initial testimony, and further permitted them to call two expert witnesses to rebut Burton's testimony. Thus, to the extent the Frolings contend that they were denied the opportunity to contest Burton's testimony, any possible issue was corrected.

The Frolings also make much of a statement by the presiding tribunal member, Victoria Enyart, who informed the Frolings that the tribunal's rules had changed approximately one year prior so that a party's prehearing statement served as their witness list. The Frolings contend this statement was false and misled them into wasting "countless hours" researching the issue. Enyart's statement was entirely accurate. Effective March 20, 2013, former Mich Admin Code, R 205.1252(2) was rescinded, and replaced with the current rule, Rule 792.10237(3). See 2013 Annual Admin Code Supp, R 205.1252, R 792.10237. The effect of the change was that rather than filing a separate witness list, under the new rule, parties are to name their witnesses in their prehearing statements.

[9] Without citation to any authority, the Frolings contend that the continued hearing "should have been deemed a rehearing . . . ." By failing to cite any authority for their contention, the Frolings have waived the argument. A party may not simply state a position and leave it for this Court to search for authority to sustain or reject that position. *Clay v Doe*, 311 Mich App 359, 365 n 3; 876 NW2d 248 (2015).

property."[10]  Regardless of whether the City intended to call their own engineering witness, the Frolings should have been prepared to offer testimony and evidence to support their argument to the tribunal.  Nothing prevented the Frolings from identifying an engineering expert in their own prehearing statement, which would have then allowed them to elicit direct testimony from such a witness.  In the end, the Frolings' inability to present direct testimony from their engineers is a result of their own inadequate preparation, not any improper ruling or decision by the tribunal.

### III.  COST TO CURE

The Frolings contend that the tribunal's finding that it would cost $25,000 to cure the water issues on their property was not based on substantial evidence.  We disagree.  Burton testified that the cost of his grading plan, which became known as the R-15 plan at the hearing, would be approximately $25,000.  As the Frolings' own experts acknowledged, Burton's experience and expertise qualified him to provide an opinion regarding the estimated cost of implementing the plan he designed.  Thus, despite the fact that Burton was not a contractor and had not created an itemized list of every expense associated with the plan, the tribunal's factual finding regarding the cost of the grading plan was supported by competent, material, and substantial evidence, and thus, must be affirmed.[11]

### IV.  EVIDENCE OF BIAS

The Frolings next argue that the tribunal abused its discretion when it refused to allow them to ask Burton whether he disliked William Froling.  We disagree.  A decision whether to admit evidence is reviewed for an abuse of discretion.[12]

During the continued hearing in this matter, the Frolings' representative attempted to ask Burton if he "had a negative opinion of Mr. Froling."  The tribunal found the question irrelevant. It is true that evidence of a witness's bias is *almost* always relevant.[13]  However, in this matter, the relevant issue was the viability of the R-15 plan; that, in essence, was the entire purpose of the continued hearing.  We cannot conclude that it was an abuse of discretion to refuse to allow the Frolings to inquire into such a marginally probative area as Burton's purported dislike for William Froling.  In any event, the tribunal's refusal to allow the question was clearly harmless. The tribunal made it clear that its decision would not in any way depend on who Burton liked or disliked.  Thus, even assuming Burton had some sort of dislike for the Frolings, that fact would not have affected the outcome of the matter.

The Frolings also contend that the tribunal erred during another exchange regarding Burton's opinion and prior litigation between the Frolings and the City.  During this part of the record, the City's attorney objected that a portion of a question assumed facts not in evidence,

---

[10] MCL 205.737(3).

[11] *Drew*, 299 Mich App at 499.

[12] *Becker-Witt*, 256 Mich App at 365.

[13] *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001).

and that objection was sustained. The Frolings fail to address the basis for the ruling, and thus, we need not even consider granting relief.[14]

## V. MOTION TO COMPEL

The Frolings next argue that the tribunal abused its discretion by denying their motion to compel discovery. We disagree. "This Court reviews rulings on motions to compel discovery for an abuse of discretion."[15]

The Frolings filed a discovery request prior to the close of discovery in this matter. The City did not respond. However, it was not until after the prehearing conference that the Frolings decided to file a motion to compel. Discovery closed approximately two months prior to the filing of the motion, and the tribunal denied the motion to compel because it was filed after discovery closed.

This Court has concluded that a lower court does not abuse its discretion when it refuses to compel discovery when the discovery request itself is made after the close of discovery.[16] The case at bar is somewhat distinguishable in that while the motion to compel was brought after the close of discovery, the discovery request itself was served while discovery was still open. We have found no published decisions holding that denying a motion to compel under such circumstances is or is not an abuse of discretion, and the parties have cited none. But as a general matter, it is the lower tribunal's "right and duty to control the flow of litigation."[17] Here, the matter was pending for approximately two years at the time the motion to compel was filed. A prehearing conference had been completed, and the matter was set to proceed to trial. The parties had exchanged valuation summaries, witness lists, and other discovery. And as the tribunal noted, discovery was undoubtedly closed at the time the motion was filed. The Frolings were not only aware of this fact, but had themselves objected to any "extensions in this matter for further discovery that could have, and should have been completed during the discovery process." There appears to be no explanation for why the motion to compel was brought some two months after it could have been brought.[18] Under the circumstances, we cannot conclude that the tribunal abused its discretion by denying the motion to compel discovery.

---

[14] *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

[15] *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005).

[16] *Chastain v Gen Motors Corp*, 254 Mich App 576, 593-594; 657 NW2d 804 (2003).

[17] *Klabunde v Stanley*, 384 Mich 276, 281; 181 NW2d 918 (1970).

[18] Pursuant to Mich Admin Code, R 792.10243(3), the City was required to respond to the discovery request within 28 days. Because the request was filed and served on March 18, 2014, the City's response was due no later than April 15, 2014. The Frolings' motion to compel was dated June 19, 2014.

## VI. VIABILITY OF THE R-15 PLAN

The Frolings next contend that the tribunal erred by adopting the R-15 plan because it would be illegal for the Frolings to implement this plan and would subject them to civil liability. We disagree.

The Frolings contend that the R-15 plan would be illegal and subject them to civil liability because, via grading, the plan directs water toward an adjoining property. However, it was undisputed that during or after heavy rain events, the Frolings do precisely what they contend is illegal: they pump water to the same area. Burton further explained that the R-15 plan would satisfy the applicable ordinance and would be approved by the City. Burton was in a prime position to testify to this fact. As the City's longtime consulting engineer, he reviewed every grading plan filed with the City and provided the City with recommendations regarding whether the proposal satisfied the ordinance—an ordinance Burton himself helped draft. The record easily supports the tribunal's conclusion that the R-15 plan was a viable solution.[19]

In any event, the premise of the Frolings' argument is flawed. The tribunal did not order the Frolings to adopt any particular plan to address the water concerns. The tribunal's task was to evaluate the value of the property. The Frolings contended that the water issues negatively affected the value of the property, which must be accounted for in this valuation exercise. The R-15 plan served only as a representation of the negative value of the water problems. Its inclusion by the tribunal was not an order that the plan actually be adopted.[20]

## VII. MOTION TO DISQUALIFY

Finally, the Frolings argue that the tribunal erred when it denied their motion to disqualify the presiding tribunal member, Victoria Enyart, from this matter. We disagree. When reviewing a decision on a motion to disqualify, this Court reviews factual findings for an abuse of discretion and the application of those facts to the relevant law de novo.[21]

---

[19] Further, the only alternative suggested to the tribunal was the Frolings' sewer plan. But the record tended to show that this plan would encounter similar, if not more severe, issues such as those the Frolings argue would be created by the R-15 plan. According to Burton, the sewer plan would require alterations to at least four other properties, and much the same as the R-15 plan, would not outlet to the Frolings' property.

[20] The Frolings cite two cases, *Terlicki v Stewart*, 278 Mich App 644, 655-658; 754 NW2d 899 (2008), and *Horvath v Delida*, 213 Mich App 620, 624-625; 540 NW2d 760 (1995), as establishing that the R-15 plan is illegal. At the pages cited by the Frolings, these cases address when the statute of limitations begins to run for claims involving property damage. *Terlicki*, 278 Mich App at 655-658; *Horvath*, 213 Mich App at 624-625. The Frolings fail to explain how either case establishes that the R-15 plan would undoubtedly subject them to civil liability.

[21] *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009).

On appeal, the Frolings contend that because the tribunal made a number of rulings against them, disqualification was required. The Frolings must overcome a heavy presumption of impartiality.[22] "Judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible."[23] "The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment."[24] The Frolings contend that Enyart made a number of intentional factual misstatements while ruling on issues raised during the hearing and in its written orders. Given that judicial rulings almost never warrant disqualification, the Frolings' argument is tenuous at best. Further, after reviewing the allegations of false statements, we are entirely unpersuaded, because we can discern no false statements made by the tribunal. Rather, it is clear that the allegations made by the Frolings stem from their own misunderstandings.

The Frolings also contend that they were entitled to have the motion heard by the entire tribunal, sitting *en banc*. Their argument is based on a misreading of MCL 24.279, which provides, in relevant part, that "[o]n the filing in good faith by a party of a timely and sufficient affidavit of personal bias or disqualification of a presiding officer, the agency shall determine the matter as a part of the record in the case, and its determination shall be subject to judicial review at the conclusion of the proceeding." The Frolings contend that the word "agency" refers to the entire agency, not one member of that agency. An agency is represented by one or more individuals, who serve as presiding officers in contested cases.[25] The decision of one officer of the agency serves as the decision of the agency. Thus, it is not necessary that the entire tribunal decide such a motion sitting *en banc*.

But if there could be any possible confusion, it is resolved by MCR 2.003(D)(3), which explicitly describes the manner for deciding a motion to disqualify:

> (3) *Ruling*.
>
> (a) For courts other than the Supreme Court, the challenged judge shall decide the motion. If the challenged judge denies the motion,
>
> (*i*) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo[.]

Because no administrative rule specifically covered the issue, pursuant to Mich Admin Code, R 792.10215, the Michigan Court rules controlled the matter. Thus, by having Enyart first decide the issue, and when challenged, referring the matter to the tribunal chair for a decision,

---

[22] *Gates v Gates*, 256 Mich App 420, 440; 664 NW2d 231 (2003).

[23] *Contempt of Henry*, 282 Mich App at 680 (quotation marks, brackets, and citations omitted).

[24] *Id*.

[25] MCL 24.279.

the tribunal followed to the letter the language of the court rule. There is absolutely no authority to support the Frolings' claim that the entire tribunal, sitting *en banc*, must decide a motion to disqualify.

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray